Argued and submitted March 1, 2019; decision of Court of Appeals reversed as to plaintiff's first claim for relief and defendant's equitable affirmative defenses and counterclaim for attorney fees, but otherwise affirmed; judgment of circuit court affirmed in part and reversed in part January 30, 2020

Rich JONES,
*Petitioner on Review,*

*v.*

FOUR CORNERS ROD AND GUN CLUB,
an Oregon non-profit corporation,
*Respondent on Review.*

(CC 13C12103) (CA A157826) (SC S066044)

456 P3d 616

Jones agreed to provide groundskeeping and maintenance services for Four Corners in exchange for lodging and related benefits. Although Oregon's wage laws generally authorize employers to deduct from an employee's wages "the fair market value of lodging, meals or other facilities or services furnished by the employer for the private benefit of the employee," ORS 653.035(1), Four Corners did not comply with ORS 652.610(3), which sets out requirements that employers must follow in order to lawfully withhold wages from an employee. When Jones sued to recover his unpaid wages, Four Corners admitted liability for Jones's unpaid wages and for statutory penalties but asserted an equitable claim to recover the value of the lodging benefit. The court considered whether Four Corners could assert the equitable claim, either as an affirmative defense to plaintiff's wage claim or as a lawful counterclaim. *Held*: Four Corners' violation of ORS 652.610 prevented it from asserting an affirmative defense to defeat Jones's wage claim, but Four Corners was not prevented from asserting an equitable counterclaim for the value of the lodging benefit.

The decision of the Court of Appeals is reversed as to plaintiff's first claim for relief and defendant's equitable affirmative defenses and counterclaim for attorney fees, but it is otherwise affirmed. The judgment of the circuit court is affirmed in part and reversed in part.

En Banc

On review from the Court of Appeals.*

Conrad E. Yunker, Conrad E. Yunker, P.C., Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs was David Schuck, Schuck Law, LLC, Vancouver, Washington.

_____

* On appeal from Marion County Circuit Court, Kip Leonard, Judge. 290 Or App 811, 418 P3d 765 (2018).

Brian A. Buchanan, Salem, argued the cause and filed the brief for respondent on review.

Shenoa Payne, Richardson Wright LLP, Portland, filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

FLYNN, J.

The decision of the Court of Appeals is reversed as to plaintiff's first claim for relief and defendant's equitable affirmative defenses and counterclaim for attorney fees, but it is otherwise affirmed. The judgment of the circuit court is affirmed in part and reversed in part.

Nelson, J., dissented and filed an opinion, in which Nakamoto, J., joined.

**FLYNN, J.**

This appeal arises out of plaintiff's civil action to recover unpaid wages that defendant unlawfully withheld after the parties agreed to trade a lodging benefit for labor. Although Oregon's wage laws authorize employers to deduct from an employee's wages "the fair market value of lodging, meals or other facilities or services furnished by the employer for the private benefit of the employee," ORS 653.035(1), those laws also prohibit employers from taking any deduction from wages unless the employer obtains the employee's advance written authorization and keeps a record of the deductions, ORS 652.610(3) (2013).[1] Defendant admittedly failed to comply with the requirements for deducting the lodging benefit from plaintiff's wages.

The issue in this court is whether defendant's violation of ORS 652.610(3) prevents defendant from asserting an equitable claim for the value of the lodging benefit, either as an affirmative defense to plaintiff's wage claim or as a lawful counterclaim. We conclude that defendant's unlawful withholding of wages prevents it from asserting the value of the lodging benefit as an affirmative defense to defeat plaintiff's wage claim but does not prevent defendant from asserting an equitable counterclaim for the value of the lodging benefit.

## I.   BACKGROUND

The factual and procedural posture of the case are set out in detail in the opinion of the Court of Appeals. *Jones v. Four Corners Rod and Gun Club*, 290 Or App 811, 418 P3d 765 (2018). We summarize those details that are pertinent to the dispute in this court. The dispute arises out of an agreement that plaintiff would provide maintenance and groundskeeping labor in exchange for a lodging benefit

---

[1] Unless otherwise specified, all references in this opinion to ORS 652.610 are to the 2013 version of the statute. ORS 652.610 was amended in 2016, and now requires that employees "voluntarily" authorize the deductions in writing and that employers also provide the employee a written itemization that documents, among other things, "the amount and purpose of each deduction." Or Laws 2016, ch 115, § 1. Those amendments do not govern this case.

(lodging at a home located on defendant's property as well as utilities and cellular phone service).[2] However, defendant never obtained plaintiff's written authorization to deduct the lodging benefit from plaintiff's wages. The employment relationship lasted for a period of three years, during which plaintiff never received a paycheck, paycheck stub, or any monetary wages and defendant kept no records of the deductions. Eventually, defendant terminated plaintiff's employment and obtained a judgment evicting plaintiff from the home.

After defendant terminated plaintiff's employment, plaintiff brought the present action, in which he asserted claims for unpaid minimum wages, statutory civil penalties, and statutory attorney fees. *See* ORS 652.200 (providing that, with some exceptions, "court shall" award "a reasonable sum for attorney fees" to a successful plaintiff in a judgment for unpaid wages); ORS 652.615 (creating private cause of action for violations of ORS 652.610(3) and authorizing award to prevailing party of actual damages or $200, whichever is greater, in addition to costs, disbursements, and reasonable attorney fees). Defendant responded by admitting most of plaintiff's allegations, but it asserted an affirmative defense of "setoff" based on the value of the lodging benefits.[3] Defendant also asserted equitable counterclaims premised on the theory that plaintiff would be unjustly enriched at defendant's expense if plaintiff were allowed to recover wages in addition to the value of the lodging benefit. Finally, defendant asserted as a counterclaim that it should be awarded an attorney fee because its affirmative defense of setoff prevented plaintiff from recovering anything on his claim for unpaid wages. *See* ORS 653.055(4) ("court may award reasonable attorney fees to the prevailing

---

[2] The parties' employment agreement specified:

"For the consideration of the right to occupy and live in the mobile home on the premises of the CLUB, free of any further charge, CUSTODIAN agrees to perform the duties as set forth in the job description attached hereto as EXHIBIT 1 and initialed by an authorized CLUB representative and CUSTODIAN[.]"

[3] Defendant alleged other affirmative defenses, including the right to set off an amount that it obtained in the judgment evicting plaintiff from the premises. The trial court's rulings on those other affirmative defenses are not at issue in this court.

party in any action brought by an employee" to recover unpaid wages).

Pointing to defendant's violation of ORS 653.610(3), plaintiff denied that defendant lawfully could recover the value of the lodging benefit as either a setoff or counterclaim to plaintiff's claim for unpaid wages. However, the parties agreed to submit the few factual disputes to the jury before resolving the legal disputes. The jury found that plaintiff had earned a minimum wage of $38,796 during the years he had worked for defendant; that defendant had provided the lodging for plaintiff's "private benefit"; and that the value of that lodging benefit was $43,403. The parties then submitted legal arguments regarding how those findings should affect the judgment.

Defendant acknowledged that plaintiff was owed wages in the amount that the jury found plus prejudgment interest on the unpaid wages. Defendant also agreed that it owed a statutory penalty for its unlawful deductions as well as a penalty for deducting the value of the lodging benefit without following the statutory requirements for such deductions and that it owed a penalty for its failure to pay plaintiff wages due upon termination. But defendant contended that the value of its lodging benefit cancelled out the amount due to plaintiff on his first claim for relief, making defendant the prevailing party on that claim and the party entitled to recover an attorney fee pursuant to ORS 653.055(4). Defendant anchored its right to recover the value of the lodging benefit in ORS 652.610(5), which provides that the prohibition on making unauthorized deductions from wages does not "[d]iminish or enlarge the right of any person to assert and enforce a lawful setoff or counterclaim."

Plaintiff contended that defendant's equitable claim to the value of the lodging benefit was not a "lawful setoff or counterclaim" because it would effectively nullify plaintiff's statutory right to recover wages and penalties. According to plaintiff, "[d]efendant should not be permitted to advance arguments of equity to relieve itself of the consequences of its own unlawful acts."

The trial court agreed with defendant that defendant was entitled to recover the value of the lodging benefit.

Moreover, because the value of the benefit "more than fully offset" the wages that the jury found were due to plaintiff, the court determined that defendant was the prevailing party on plaintiff's claim for unpaid minimum wages. As a result, the court denied an award of attorney fees to plaintiff on the claim for unpaid wages and awarded defendant an attorney fee for prevailing on that claim. Next, the court ruled for plaintiff on his claims for statutory civil penalties but declined to award plaintiff attorneys fees for recovering on those claims.[4] The "money award" section of the judgment reflects the court's conclusion that the net amount due to plaintiff was "$0" and that defendant was entitled to a net award for attorney fees of $12,520 and prevailing party costs in the amount of $1,080.

On appeal, plaintiff assigned error to most of the trial court's rulings regarding the judgment. He repeated his arguments that defendant could not use the value of the lodging benefit to offset its liability for unpaid minimum wages, whether as an affirmative defense or counterclaim. Thus, plaintiff argued, the trial court erred in identifying defendant as the prevailing party on plaintiff's wage claim and in awarding defendant, rather than plaintiff, attorney fees on that claim. Plaintiff also separately assigned error to the trial court's refusal to award plaintiff attorney fees for prevailing on his claims for statutory civil penalties.

The Court of Appeals reversed and remanded the judgment with respect to the issue of attorney fees on plaintiff's claims for statutory penalties, but it otherwise affirmed the trial court's judgment. *Jones*, 290 Or App 811. The court first observed that the nature of defendant's affirmative defense was really that of "recoupment" rather than "setoff," because "the value of lodging and utilities sought by defendant arose out of the transaction upon which plaintiff's wage claims were brought." *Id.* at 822. The court concluded, however, that labeling the defense "recoupment" did not affect defendant's ability to prevail on its affirmative

---

[4] The general judgment specifies that the court awarded plaintiff a statutory penalty of $2,112 for defendant's failure to pay wages due on termination, ORS 652.150, and another statutory penalty of $7,200 ($200 per violation) for defendant's unauthorized deductions of the lodging benefit from plaintiff's wages, ORS 652.615, but "awarded nothing" on plaintiff's claim for unpaid minimum wages.

defense.[5] Thus, the Court of Appeals agreed with the trial court that defendant could assert the value of the lodging benefit as a lawful affirmative defense, which effectively "zeroed out" plaintiff's recovery on his first claim and made defendant the prevailing party entitled to attorney fees on that claim. *Id.* at 823 (internal quotation marks omitted). This court allowed plaintiff's petition for review, and, as explained below, we reverse in part the decision of the Court of Appeals.

## II.  ANALYSIS

A.  *Oregon's Wage Laws as Context for the Dispute in this Case*

Before analyzing the parties' arguments, we begin by describing the statutory framework out of which the dispute arises. The starting point is ORS 653.025, which establishes a general minimum wage requirement for Oregon workers:

> "[F]or each hour of work time that the employee is gainfully employed, no employer shall employ or agree to employ any employee at wages computed at a rate lower than [the minimum rate set out by statute.]"

Throughout the term of employment, the employer must pay the wages due on an established pay day, ORS 652.120, and when the employment terminates—whether through discharge or mutual agreement—"all wages earned and unpaid" are "due and payable not later than the end of the first business day after the discharge or termination," ORS 652.140(1).

Those general rules are subject to exceptions, one of which is at issue in this case. The pertinent exception authorizes employers to credit against an employee's wages "the fair market value of lodging, meals or other facilities or services furnished by the employer for the private benefit of the

---

[5]  The Court of Appeals observed that "this appears to be a case where defendant asserted a 'lawful setoff or counterclaim,'" without analyzing the question in detail, because it did not understand plaintiff to have raised that argument below (or at least not in a timely manner). *Jones*, 290 Or App at 819. We disagree with that assessment of plaintiff's arguments below, and we, therefore, analyze the question in detail.

employee." ORS 653.035(1); *see also* OAR 839-020-0025(1) (providing the same).

The legislature has also specified, however, that employers may not "withhold, deduct or divert any portion of an employee's wages unless: \*\*\* [t]he deductions are authorized in writing by the employee, are for the employee's benefit and are recorded in the employer's books[.]" ORS 652.610(3)(b). We have emphasized that

"ORS 652.610(3)(b) is unambiguous. An item must fall within its strictures to be deducted under it—that is, the employee's written authorization must be given, and the deduction must be recorded in the employer's books and must be for the ultimate benefit of the employee."

*Taylor v. Werner Enterprises, Inc.*, 329 Or 461, 470, 988 P2d 384 (1999).[6]

Finally, the legislature has specified that, if an employer unlawfully withholds wages in violation of ORS 652.610(3) or otherwise fails to pay wages due to the employee, then the employee may bring a civil action in which the employee is entitled to recover the amount of unpaid wages, civil penalties, and a reasonable attorney fee for prevailing on the claims. *See* ORS 653.055 ("employer who pays an employee less than the wages to which the employee is entitled under ORS 653.010 to 653.261 is liable to the employee affected" for wages plus "civil penalties provided in ORS 652.150"); ORS 652.150 (employee entitled to recover civil penalty if employer fails to pay wages due to employee when employment ceases); ORS 652.200 (court "shall" award "a reasonable sum for attorney fees" in an action to collect wages, unless "the plaintiff's attorney unreasonably failed to give written notice of the wage claim to the employer before filing the action"); ORS 652.615 (for violations of ORS 652.610(3), employee has private cause of action to recover

_____

[6] Although we have not specifically addressed the intersection of ORS 652.610(3) and ORS 653.035(1), the governing regulations make it clear that any employer wishing to withhold an employee's wages to cover the value of "meals, lodging or other facilities or services furnished" provided "for the private benefit of the employee" must do so in compliance with the requirements of ORS 652.610(3)(b) and—in addition—must "maintain and preserve records substantiating the fair market value of furnishing each class of facility." OAR 839-020-0025(3), OAR 839-020-0082(1).

"actual damages or $200, whichever is greater," plus "court may award to the prevailing party, in addition to costs and disbursements, reasonable attorney fees").

In this case, there is no dispute that defendant failed to pay plaintiff any wage. The dispute centers on the significance of two other undisputed facts: (1) defendant withheld wages to cover lodging that it provided for plaintiff's "private benefit" and (2) defendant withheld (or deducted) wages in violation of ORS 652.610(3) because it neither obtained plaintiff's written consent nor maintained the records necessary to lawfully deduct the benefit from plaintiff's wages.

According to defendant, the first fact overrides the second, allowing defendant to defeat plaintiff's claim for the unlawfully withheld wages. Defendant highlights the explanation in ORS 652.610(5) that

"[t]his section does not:

"*****

"(c)   Diminish or enlarge the right of any person to assert and enforce *a lawful setoff or counterclaim* or to attach, take, reach or apply an employee's compensation on due legal process."

(Emphasis added.) That provision, defendant argues, confirms its right to assert the value of the lodging benefit that it provided to plaintiff as an affirmative defense. Defendant argues that calling its affirmative defense a "recoupment," as the Court of Appeals did, does not undermine the trial court's conclusion that defendant is the prevailing party on plaintiff's wage claim.

According to plaintiff, the second fact overrides the first and requires defendant to forfeit the value of the lodging benefit it provided to plaintiff. Plaintiff argues that defendant's affirmative defense sought "recoupment," as the Court of Appeals concluded, and that ORS 652.610(5)(c) does not preserve a right to "recoupment." He also contends that it "follows inexorably" that, if a deduction from an employee's wages was unlawful, then it is also unlawful to allow the employer to take the same deduction through a setoff or counterclaim against the plaintiff's wage claim.

B.   *Resolving the Dispute*

Neither party is entirely correct. We conclude that the legislature intended employers who have taken a deduction from the employee's wages in violation of ORS 652.610(3) to be liable on a civil claim for the unpaid wages, statutory penalties, and a reasonable attorney fee, even if the employer provided a benefit that could have justified a lawful deduction. That legislative intention precludes employers from asserting the value of the unlawfully deducted benefit as an affirmative defense to defeat the claim for unpaid wages. But we also conclude that an employer's violation of ORS 652.610(3) does not require the employer to forfeit the right to bring an equitable counterclaim under the circumstances of this case.

1.   *The distinction between defendant's affirmative defense and counterclaim*

We begin by explaining why this case is not as simple as plaintiff's proposition that, if the value of a benefit was deducted from wages unlawfully then "it follows inexorably" that the employer cannot assert the value of the benefit either as an affirmative defense or counterclaim. Although plaintiff contends that the legislature has made defendant's affirmative defense and counterclaim equally "unlawful," his argument fails to recognize a distinction between affirmative defenses and counterclaims that is particularly significant in this case. An affirmative defense can cause the plaintiff to lose on the asserted claim, as defendant's affirmative defense did here. *See Rogue River Management Co. v. Shaw*, 243 Or 54, 60, 411 P2d 440 (1966) (explaining that "[r]ecoupment and set-off may be available as defenses for the purpose of liquidating the whole or part of plaintiff's claim"); *see also Black's Law Dictionary* 509 (10th ed 2014) (defining "affirmative defense" as "[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true"). And when the claim is one for unpaid wages, a successful affirmative defense not only defeats the claim but also shifts the parties' obligations with respect to attorney fees and other relief, such as penalties and

prejudgment interest, that may be available to the party who prevails on the claim.

By contrast, a counterclaim is an independent cause of action against the plaintiff. *See Rogue River Management*, 243 Or at 60 (explaining that a "cognizable counterclaim must plead facts giving the defendant an independent cause of action against plaintiff"). A defendant's success on a counterclaim might affect the net money award in the judgment, but it does not cause the plaintiff to lose on the asserted claim. And success on a counterclaim does not shift the parties' obligations with respect to attorney fees and other relief afforded to the prevailing party on any particular claim because the legislature has specified that entitlement to an award of attorney fees is to be made on a claim-by-claim basis, rather than on a "net judgment" basis, ORS 20.077(2).[7]

This case illustrates how significant those distinctions can become. Although defendant's affirmative defense and counterclaim pled alternative ways to obtain the same basic relief—reducing plaintiff's wage recovery by the value of the lodging benefit—obtaining that relief through an affirmative defense produced a qualitatively different outcome for the case. By allowing defendant to assert the value of the lodging as a successful affirmative defense, the trial court and the Court of Appeals made defendant the prevailing party on plaintiff's wage claim, which allowed defendant—and not plaintiff—to recover attorney fees on

---

[7] ORS 20.077(2) provides:

"For the purposes of making an award of attorney fees on a claim, the prevailing party is the party who receives a favorable judgment or arbitration award on the claim. If more than one claim is made in an action or suit for which an award of attorney fees is either authorized or required, the court or arbitrator shall:

"(a) Identify each party that prevails on a claim for which attorney fees could be awarded;

"(b) Decide whether to award attorney fees on claims for which the court or arbitrator is authorized to award attorney fees, and the amount of the award;

"(c) Decide the amount of the award of attorney fees on claims for which the court or arbitrator is required to award attorney fees; and

"(d) Enter a judgment that complies with the requirements of ORS 18.038 and 18.042."

the wage claim. *See* ORS 20.077(2). Had defendant, instead, obtained the same equitable relief through its counterclaim, plaintiff would still be the prevailing party on the wage claim, and the party entitled to recover attorney fees. As we will explain, the disparate effect on plaintiff's ability to prevail on plaintiff's claim for unpaid wages contributes to our conclusion that the trial court erred in allowing defendant to prevail on its affirmative defense but did not err in allowing defendant to prevail on its counterclaim.

   2.  *Defendant's affirmative defense based on the lodging benefit*

We turn first to defendant's affirmative defense. Plaintiff argues that the purpose of ORS 652.610(3) is to protect employees from abusive wage-withholding practices and that the legislature's enforcement mechanism is meaningless if an employer can escape liability for unlawfully withholding wages by claiming a credit for the amount of the unlawful deduction. Plaintiff's argument is persuasive.

As we have explained above, the restrictions imposed by ORS 652.610(3) prevent employers from withholding wages—even to recover a legitimate debt—unless the employer complies with the requirements of written consent and recordkeeping. When an employer violates that statute, the legislature has specified that the employee may bring a civil action and recover the unpaid wages, plus statutory penalties, plus a reasonable attorney fee for prevailing on the claims. ORS 653.055 (describing liability for unpaid wages); ORS 652.150 (describing penalty for failure to pay wages at termination); ORS 652.200 (describing right to attorney fees in action to collect wages); ORS 652.615 (describing private cause of action for violations of ORS 652.610(3)).

We have long emphasized that the penalty provisions of the wage statutes serve to "protect employees from unscrupulous or careless employers who fail to pay wages when due" and "to spur an employer to the payment of wages when they are due." *State ex rel Nilsen v. Cushing*, 253 Or 262, 269, 453 P2d 945 (1969); *Nordling v. Johnston*, 205 Or 315, 326, 283 P2d 994 (1955). Yet, as this case illustrates, those statutory protections are rendered largely

meaningless if an employer who has unlawfully withheld wages to cover a debt can use the same debt to avoid liability when the employee brings a claim to recover for the unlawfully withheld wages.

Moreover, in another statutory provision, the legislature has expressly prevented that kind of end-run around the requirements of Oregon's wage laws. ORS 652.360(1) specifies that employers

> "may not by special contract or any other means exempt the employer from any provision of or liability or penalty imposed by ORS 652.310 to 652.414 *or any statute relating to the payment of wages*, [unless the Bureau of Labor and Industries approves the arrangement in writing]."

(Emphasis added.) We have previously analyzed the phrase "any statute relating to the payment of wages" and concluded that, "under ORS 652.360, the agreements signed by [the employee] cannot exempt [the employer] from liability or any penalty imposed [for the employer's] violations of ORS 652.150 and ORS 652.610." *Taylor*, 329 Or at 467, 469 (footnote omitted).

The defendant in *Taylor* sought to avoid liability on a claim for unlawfully withheld wages by arguing that the plaintiff had signed a form agreeing that he would not consider the defendant his employer, which would have made the withholding restrictions of ORS 652.610 inapplicable to the defendant. *Id.* at 468-69. We held that ORS 652.360 precluded that defense because ORS 652.610 was a "statute relating to the payment of wages." *Id.* at 469. Although defendant, here, does not contend that the lodging agreement exempted it from an initial obligation to pay plaintiff's wages, by using the value of lodging to affirmatively defeat the claim for unpaid wages, defendant would avoid liability for the consequences of its unlawful withholding, which include plaintiff's need to hire an attorney to bring this action to recover the unpaid wages. That result effectively negates the prohibition that the legislature has prescribed in ORS 652.360 and the remedial framework that the legislature has established for violations of ORS 652.610(3) in particular.

Defendant's only meaningful response to those strong indications of the legislature's intention is its argument that ORS 652.610(5)—the "lawful setoff or counterclaim" provision—demonstrates a legislative intention to permit the kind of affirmative defense that defendant asserted here, a proposition with which plaintiff disagrees. To resolve the parties' dispute regarding the meaning of ORS 652.610(5), we apply our established methodology to determine the legislature's intended meaning. *See State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). Under that methodology, we give primary consideration to the text and context of the pertinent statutes. *Id.* at 171.

As set out above, ORS 652.610(3) specifies conditions that an employer must meet in order to lawfully "withhold, deduct or divert any portion of an employee's wages," but ORS 652.610(5) specifies that the section does not "[d]iminish or enlarge the right of any person to assert and enforce *a lawful setoff or counterclaim.*" (Emphasis added.) That disputed provision was added to ORS 652.610 in 1977, *see* Oregon Laws 1977, chapter 618, section 2, but its history goes back much farther. Wording identical to the quoted provision appeared in *former* ORS 652.410 and dated to the original adoption of that statute in 1933. Or Laws 1933, ch 279, § 8.[8]

Neither the term "lawful" nor the term "setoff" is defined for purposes of ORS 652.610(5), but both have established meanings that have remained unchanged since the legislature first adopted the provision. We have observed that the "ordinary meaning of the word 'lawful'" is captured by the definition "'conformable to law : allowed or permitted by law : enforceable in a court of law ***.'" *State v. Ausmus*, 336 Or 493, 503-04, 85 P3d 864 (2003) (quoting

---

[8] *Former* ORS 652.410 (1975), *repealed by* Or Laws 1977, ch 618, § 2, provided:

"ORS 652.310 to 652.400 [(relating to enforcement of wage claims)] do not affect the right of any employer under lawful contract to retain part of the compensation of any employe [*sic*] for the purpose of affording such employe [*sic*] insurance, or hospital, sick or other similar relief. *Nor shall those statutes diminish or enlarge the right of any person to assert and enforce a lawful set-off or counterclaim or to attach, take, reach or apply an employe's [sic] compensation on due legal process.*"

(Emphasis added.)

*Webster's Third New Int'l Dictionary* 1279 (unabridged ed 1993). In *Ausmus*, although examining a different statute, we explained that "this court generally gives words of common usage their plain, natural, and ordinary meaning," and we accordingly concluded that the legislature intended the quoted "dictionary definition to serve as the meaning of the word 'lawful.'" *Id*. at 504. The same dictionary definition has been in force since before 1933. *See Webster's New International Dictionary* 1222 (2d ed 1921) (lawful means "[c]onformable to law; allowed or permitted by law"); *State v. Eastep*, 361 Or 746, 751 n 2, 399 P3d 979 (2017) (explaining that "any version of *Webster's Third*—regardless of its copyright date—provides a relevant source of ordinary meaning for statutes enacted any time after 1961"). And, as in *Ausmus*, we conclude that the legislature intended the ordinary meaning of the word "lawful" to serve as the meaning of the word in the provision that is now part of ORS 652.610(5).

The term "setoff" also has a longstanding established legal meaning, of which we presume the legislature was aware at the time it adopted the law.[9] *See Joshi v. Providence Health System*, 342 Or 152, 158, 149 P3d 1164 (2006) (explaining our assumption "that, in using the term 'caused,' the legislature intended to incorporate the legal meaning of that term that this court has developed in its cases"). This court has long defined a "setoff" as "a money demand by the defendant against the plaintiff" for "a debt *independent of and unconnected with the cause of action set forth in the complaint.*" *Krausse v. Greenfield*, 61 Or 502, 507, 123 P 392 (1912) (emphasis added); *see also Korlann v. E-Z Pay Plan*, 247 Or 170, 176, 428 P2d 172 (1967) ("Setoff is usually allowed where, through a course of separate transactions, two parties become indebted to each other.").

---

[9] There is no traditional legislative history available to inform our understanding of what the legislature intended when it adopted the phrase "diminish or enlarge the right of any person to assert and enforce a lawful set-off or counterclaim" because legislative records concerning the history of state laws passed prior to 1935 were destroyed in the 1935 fire that burned down the state capitol. Or Laws 1933, ch 279, § 8 (adopting text quoted above); *State v. Rainoldi*, 351 Or 486, 499, 268 P3d 568 (2011) (noting lack of legislative history for statute passed prior to 1935 because applicable records "literally went up in smoke with the burning of the state capitol in 1935").

This court has highlighted the "unconnected" nature of a claim for "setoff" by repeatedly distinguishing the claim of "setoff" from a claim for "recoupment." For example, in *Jewell v. Compton*, 277 Or 93, 97, 559 P2d 874 (1977), we emphasized that "recoupment seeks the reduction of a claim because of an offsetting claim arising out of exactly the same transaction," which justifies "treating it differently than a set-off which seeks a reduction because of an offsetting claim arising out of a totally unrelated transaction." (Internal quotation omitted.) *See also Krausse*, 61 Or at 507 ("recoupment *** is confined to matters arising out of, and connected with, the transaction or contract upon which the suit was brought" (internal quotation omitted)). Similarly, we explained in *Rogue River Management* that "recoupment," a term of French origin, "means the 'cutting back' of the plaintiff's claim by the defendant," and it "is confined to matters arising out of and connected with the transaction upon which the action is brought." 243 Or at 58-59. It differs from a defense of "set-off" in that a setoff "is a 'money demand by the defendant against the plaintiff arising upon contract and constituting a debt *independent of and unconnected with the cause of action* set forth in the complaint.'" *Id*. at 59 (quoting Thomas W. Waterman, *A Treatise on the Law of Set-Off, Recoupment, and Counter Claim* § 9 (2d ed 1872) (emphasis in *Rogue River Management*)).

Thus, we agree with the Court of Appeals that defendant's affirmative defense was one of "recoupment," not "lawful setoff." The defense sought to reduce (to zero) plaintiff's claim for unpaid wages based on the same debt that was the object of the unlawful wage deductions upon which the suit was brought. As we held in *Rogue River Management*, the defendant, "by alleging overcharges arising out of the transactions on which the complaint was based, pleaded everything necessary for recoupment." 243 Or at 61.[10]

---

[10] An illustrative contrast is found in a second claim of "setoff" that defendant asserted. As set out in the decision of the Court of Appeals, "[d]efendant also asserted that any relief granted to plaintiff should be set off by $1,478, representing money owed to defendant from plaintiff pursuant" to the judgment that defendant obtained in the eviction action against plaintiff. *Jones*, 290 Or App at 814. That debt is "independent of and unconnected with the" wage claim, *see Krausse*, 61 Or at 507, and plaintiff has not challenged defendant's right to a "lawful setoff" in the amount of the eviction judgment.

Unlike the Court of Appeals, however, we conclude that correctly identifying the nature of the affirmative defense as a "recoupment" of the same debt that defendant unlawfully deducted from plaintiff's wages demonstrates that the trial court erred in allowing defendant to prevail on its affirmative defense. An examination of the statutory text and context persuades us that the legislature did not intend to allow employers to assert an affirmative defense of recoupment to defeat a claim for unlawfully deducted wages. The first indication of that intent is the text of ORS 652.610(5) itself. Although "recoupment" has been a legal concept distinct from "setoff" throughout the twentieth century, ORS 652.610(5) refers only to "setoff," not to "recoupment." We presume that the legislature was aware of the distinct legal doctrine of "recoupment" when it specified that the restrictions on wage deductions do not affect a "lawful setoff or counterclaim," and that it intentionally omitted "recoupment" from that provision. *See Joshi*, 342 Or at 158 (assuming that "legislature intended to incorporate the legal meaning" of term "that this court has developed in its cases"); ORS 174.010 (court's role in construing statutes is "not to insert what has been omitted, or to omit what has been inserted").

The broader context of the legislature's prescribed consequences for violations of ORS 652.610(3) reveals that there was good reason for the legislature to intentionally omit a reference to "recoupment." As we have explained, the term "recoupment" applies to an employer's effort to reduce its liability for having taken a wage deduction in violation of ORS 652.610(3) by asserting a credit for the same amount that it unlawfully deducted from the employee's wages. *See, e.g.*, *Rogue River Management*, 243 Or at 61. We also have explained why allowing defendant to raise "recoupment" of the lodging benefit as an affirmative defense would effectively negate the remedial framework that the legislature has prescribed to protect employees from the kind of unauthorized wage deductions that defendant took here.[11] *See* ORS 652.200, ORS 652.615.

---

[11] It could be argued that an affirmative defense of "setoff" would equally negate the legislature's remedial framework, and that the reference to "lawful setoff" in ORS 652.610(5) preserves only the right to seek setoff as a counterclaim, but we are not called upon to address that question. We address only the affirmative defense of "recoupment."

Thus, we reject the conclusion of the Court of Appeals that ORS 652.610(3) authorized defendant's affirmative defense of "recoupment" to defeat plaintiff's claim for the unpaid wages. *See, e.g.*, *State v. Clemente-Perez*, 357 Or 745, 755, 359 P3d 232 (2015) (reciting "general rule" that we "assume that the legislature did not intend any portion of its enactments to be meaningless"); *State v. Cloutier*, 351 Or 68, 104, 261 P3d 1234 (2011) (declining to construe one statute in a way that would render another meaningless). We conclude that the legislature *did* intend that, when an employee brings a claim for wages that are due because they were withheld in violation of ORS 652.610(3), the remedial framework would "diminish" an employer's ability to assert "recoupment" as an affirmative defense. Employer's alleged right to "offset" the value of the lodging benefit was not a lawful affirmative defense to plaintiff's claim for unpaid wages. Accordingly, the trial court and Court of Appeals erred in identifying defendant as the prevailing party on plaintiff's first claim and in granting defendant's counterclaim for "prevailing party" attorney fees under ORS 653.055.

3. *Defendant's counterclaim based on the lodging benefit*

As we have explained above, to the extent that defendant believed it had a contract to withhold plaintiff's wages without a written authorization and recordkeeping, that contract was unlawful. We agree with the dissent that such a contract is contrary to public policy and unenforceable. *See* 366 Or at 133-34 (Nelson, J., dissenting) (quoting *Trinity v. Apex Directional Drilling LLC*, 363 Or 257, 261, 434 P3d 20 (2018)). According to plaintiff, that conclusion should dispose of defendant's equitable counterclaim to the same extent that it disposed of defendant's affirmative defense. The premise of plaintiff's argument is that allowing defendant to prevail on its counterclaim would be equivalent to allowing defendant to prevail on its affirmative defense against the wage claim. But the two are not equivalent.

Allowing defendant to assert recoupment as an affirmative defense to plaintiff's wage claim would effectively negate the statutory consequences that the legislature has prescribed for withholding wages in violation of

ORS 652.610(3). Moreover, we have concluded that ORS 652.610(5) does not preserve any right to assert "recoupment" as an affirmative defense. But allowing defendant to assert recoupment as a counterclaim does not alter plaintiff's status as prevailing party on his claims for unpaid wages, penalties, and attorney fees. And ORS 652.610(5) does preserve a right to assert a counterclaim, as long as the counterclaim is "lawful." Under the circumstances of this case, we conclude that defendant asserted a lawful counterclaim. We reach that conclusion for two reasons.

> a.  Defendant established a *prima facie* case for equitable relief.

First, defendant's counterclaim for relief in *quantum meruit* generally meets the requirements for a lawful *quantum meruit* claim (or counterclaim). As we have explained, we understand the legislature to have given the term "lawful" in ORS 652.610(5) its "plain, natural, and ordinary meaning" of "[c]onformable to law" or "allowed or permitted by law." *See Webster's New International Dictionary* 1222 (2d ed 1921). In general, the law allows a defendant to join "as many counterclaims, both legal and equitable, as that defendant may have against a plaintiff." ORCP 22 A(1).

Also in general, defendant's counterclaim for *quantum meruit* is the kind of equitable recovery that Oregon law allows. *In re Klemp*, 363 Or 62, 418 P3d 733 (2018). We emphasized in *Klemp* that claims in *quantum meruit* can proceed on two distinct theories. *Id.* at 75. Under one theory of *quantum meruit*, "which retains a contractual character," a promise to pay for services is "implied in fact." *Id.* Under the other theory of *quantum meruit*, an obligation to pay is "implied in law" because the court imposes an "obligation to pay a reasonable price on a party who has requested and received the services of another, 'as necessary to prevent unjust enrichment.'"[12] *Id.* (citing and quoting *Restatement (Third) of Restitution and Unjust Enrichment* § 31 comment e

---

[12] We have cautioned that "the question of when enrichment is unjust does not turn on whether one has been unjustly enriched in some abstract sense of moral judgment," but on whether the enrichment is unjustified by legal standards. *Larisa's Home Care, LLC v. Nichols-Shields*, 362 Or 115, 126, 404 P3d 912 (2017).

(2011)). The cited comment from the *Restatement* explains that a claim pleading the latter theory of *quantum meruit* states "a claim in restitution rather than contract" and "usually asserts that the defendant is obligated to pay a reasonable price for specified services rendered." *Restatement* § 31 comment e.

It is the latter, equitable theory of *quantum meruit* that is raised by the counterclaim in this case. We have applied the equitable doctrine of *quantum meruit* to permit recovery under circumstances comparable to those that form the basis for defendant's counterclaim here—where one party conferred a benefit on another but was unable to enforce an express agreement regarding payment because of a failure of proof or other obstacles to enforcing the express agreement.

In *Kolve v. Maid Rite Shops, Inc.*, 282 Or 89, 92, 577 P2d 502 (1978), for example, the plaintiffs were unable to prove that they had an enforceable contract with the defendants regarding rent for the plaintiffs' restaurant premises, and the trial court granted relief in *quantum meruit* for the reasonable rental value. In affirming that award, we emphasized that the defendants admittedly occupied the premises and that "[i]t could hardly come as any surprise to defendants, if they were successful in sustaining their denial of a specific agreement as to the amount of the rental, that the court might make an award based upon the reasonable value of their use of the premises." 282 Or at 92.

In *Baker v. The First National Bank*, 206 Or 434, 439, 293 P2d 742 (1956), we similarly emphasized the appropriate role of equitable recovery in *quantum meruit* when a party is unable to enforce an express agreement to be compensated for having provided a nongratuitous benefit. In *Baker*, we affirmed an award in *quantum meruit* to a plaintiff who had brought suit to recover the value of lodging and household services that she had provided to a decedent before his death. *Id.* at 436. We described the plaintiff's *quantum meruit* claim as alleging "that there was an understanding that the plaintiff's services were not gratuitous, but that she was to be compensated." *Id.* at 438. The plaintiff had offered evidence of writings signed by the deceased,

"providing that the plaintiff should share in his estate," but the writings were not in a form to be enforceable as wills of the deceased. *Id.* at 439. This court explained that we had previously "adopted a rule of law recognized in many jurisdictions" that under those circumstances, "'the person who performed the services may recover by action in *quantum meruit* against the recipient's estate.'" *Id.* (quoting *In re Estate of T.A. Stoll*, 188 Or 682, 696, 217 P2d 595 (1950)).

As the present case reaches this court, there is no dispute that defendant furnished a valuable lodging benefit to plaintiff; no dispute that plaintiff understood he was expected to provide something of value to compensate defendant for the lodging benefit; no dispute that market value of the lodging benefit exceeded the amount that plaintiff earned through minimum wages; and no dispute that, absent equitable relief, plaintiff will have received the value of the lodging benefit without providing anything of value to defendant. As a general proposition, then, the established facts appear to satisfy Oregon's *prima facie* requirements for relief in *quantum meruit*. Although it would not have been enough for defendant to show only that plaintiff received a benefit without compensation to defendant, we are persuaded that our cases recognize that landlords generally have an equitable interest in restitution for providing a lodging benefit to a tenant who is aware that the benefit is not being provided gratuitously. We agree with plaintiff and the dissent, however, that the restitution claim, nevertheless, might be disqualified if we were to determine that defendant's conduct in the transaction was inequitable. *See* 366 Or at 130 (Nelson, J., dissenting) (quoting *Restatement* § 63).[13]

b.   Defendant's counterclaim is "lawful."

Plaintiff and *amicus* insist that defendant cannot obtain equitable relief for providing the lodging benefit because defendant violated the law in deducting the benefit from plaintiff's wages. But we are not persuaded. *Amicus* relies on *Hammond v. Oregon Etc. R. Co.*, 98 Or 1, 20, 193

---

[13] *Restatement* § 63 provides that:

"Recovery in restitution to which an innocent claimant would be entitled may be limited or denied because of the claimant's inequitable conduct in the transaction that is the source of the asserted liability."

P 457 (1920), in which this court endorsed the general rule that courts will not enforce any rights arising from an "illegal contract" when the parties are "in equal fault" but "will afford relief where equity requires it," if one party is "more innocent." *Id.* at 15, 19, 20. The rule and exception described in *Hammond* are captured by section 32 of the *Restatement (Third) of Restitution and Unjust Enrichment* (2011). As pertinent, that section provides:

> "A person who renders performance under an agreement that is illegal or otherwise unenforceable for reasons of public policy may obtain restitution from the recipient * * *:
>
> "* * * * *
>
> "(2)   * * * as necessary to prevent unjust enrichment, if the allowance of restitution will not defeat or frustrate the policy of the underlying prohibition. There is no unjust enrichment if the claimant receives the counter performance specified by the parties' unenforceable agreement.
>
> "(3)   Restitution will be denied, notwithstanding the enrichment of the defendant at the claimant's expense, if a claim under subsection (2) is foreclosed by the claimant's inequitable conduct (§ 63)."

*Id.* According to *amicus*, the rule demonstrates that defendant's conduct in unlawfully withholding the lodging benefit from plaintiff's wages precludes defendant from asserting a "lawful" equitable counterclaim for the value of the lodging benefit.

The argument, however, overlooks a key limitation on the rule described in *Hammond* and in the quoted *Restatement* section: both make clear that the rule denying equitable relief from an "illegal contract" unless the party is "more innocent" is a rule that applies when the contract, itself, is illegal in its object or purpose. *See Johnson Lbr. Corp. v. Leonard et al.*, 192 Or 639, 651-52, 232 P2d 804, *adh'd to on reh'g*, 192 Or 639, 236 P2d 926 (1951) (citing with approval rule that "a party to an illegal contract, made so by a prohibition of law, cannot obtain relief in law or in equity * * * to have his *illegal objects* carried out; nor can he set up a case in which he must necessarily disclose an *illegal purpose* as the groundwork of his claim" (emphases added) (internal quotation marks and citations omitted)). For example,

the illegal agreement at issue in *Hammond* was a railroad's sale of land that was expressly prohibited by an 1869 act of Congress—a sale to purchasers who were not "actual settlers" and for a price greater than "two dollars and fifty cents per acre." 98 Or at 3 (internal quotation marks omitted).

The *Restatement* highlights an important equitable distinction between transactions that have an illegal object or purpose, like that in *Hammond*, and transactions that are unlawful because of the way that they implement an object or purpose that is otherwise lawful. As the comments to section 32 explain, "a transaction that the law condemns under any and all circumstances, such as an agreement to commit a crime" has a different status in equity than "a transaction that is intrinsically unobjectionable, but that fails in some respect to comply with applicable regulatory requirements," such as "the formation of a contract (otherwise legitimate) on terms that vary from those required by law." *Restatement* § 32 comment e. For the latter category of cases, the comment explains that restitution is available,

> "unless the court concludes that the allowance of restitution would defeat the policy of the regulation in question. That conclusion is an appropriate inference only when judicial respect for the regulatory scheme reasonably requires forfeiture as a penalty for noncompliance."

*Id.*

The *Restatement* advises that "[t]he decision whether or not to employ forfeiture as a tool of regulatory enforcement parallels the decision to be made" under the rule set out in section 31 of the *Restatement*. *Restatement* § 32 comment e. We explained in *Klemp* that section 31 of the *Restatement* addresses "restitution to a performing party whose claim for payment cannot be enforced on the basis of the other parties' promise to pay because of the indefiniteness of the other parties' promise or a failure to satisfy an extrinsic requirement of enforceability." 363 Or at 74 n 12.[14] We are persuaded that

---

[14] That rule, set out in section 31 of the *Restatement*, provides, in pertinent part:

> "(1) A person who renders performance under an agreement that cannot be enforced against the recipient by reason of
>
> "* * * * *

the distinction the *Restatement* draws—between a transaction "that the law condemns under any and all circumstances" and one that is "intrinsically unobjectionable" but fails to comply with legally required terms—is consistent with this court's equitable jurisprudence. *See, e.g.*, *Baker*, 206 Or at 436-39.

We are also persuaded that the parties' agreement in this case fits within the latter category because it sought a result that was "intrinsically unobjectionable" under the facts of this case. The legislature has expressly authorized employers to "deduct from the minimum wage to be paid employees under [certain statutes], the fair market value of lodging, meals or other facilities or services furnished by the employer for the private benefit of the employee." ORS 653.035. That is, in effect, the result that defendant sought to accomplish, given the jury's findings that defendant furnished plaintiff with a "private benefit" and that the fair market value of that benefit exceeded the amount that plaintiff was entitled to in wages. But the legislature has imposed specific requirements for accomplishing that result in a lawful manner, and defendant failed to comply with those requirements. ORS 652.610(3). Under the circumstances, we conclude that the parties' agreement was unenforceable because defendant failed to comply with legally required terms for withholding wages; as the dissent describes it, the illegality was "defendant's failure to follow the statutes regulating wage deductions for employees." 366 Or at 134 (Nelson, J., dissenting). But that agreement to provide lodging in lieu of paying wages of the same value was "intrinsically unobjectionable" because it sought a result that defendant *could have accomplished legally* under ORS 653.035.[15] Under the rule of equity described above, restitution is generally available in these circumstances unless "judicial respect for the regulatory scheme

---

"(b) the failure to satisfy an extrinsic requirement of enforceability such as the Statute of Frauds, has a claim in restitution against the recipient as necessary to prevent unjust enrichment."

*Restatement* § 31.

[15] Plaintiff has never suggested that he was unwilling to provide written consent for the deductions or that defendant's failure to keep the records required by ORS 652.610(3) was motivated by an improper purpose.

reasonably requires forfeiture as a penalty for noncompliance." *Restatement* § 32 comment e.

We are not persuaded that "judicial respect for the regulatory scheme reasonably requires" defendant to forfeit the value of the deducted benefit as part of the penalty for defendant's failure to comply with ORS 652.610(3), with one important caveat. The jury here found that the fair market value of the lodging benefit exceeded the minimum wage owed to plaintiff by approximately $131 per month, but there is no evidence that plaintiff expected to incur a financial obligation to defendant beyond the value of his minimum wages. We agree with the dissent that defendant's failure to follow the statutes regulating wage deductions denied plaintiff notice that his wages were falling short of the value of his lodging benefit and denied him the opportunity to make an informed choice about incurring that shortfall. 366 Or at 132 (Nelson, J., dissenting). As the reporter of the *Restatement* cautions, "restitution is properly denied if the possibility of a recovery for benefits conferred would constitute an unacceptable incentive to engage in the prohibited transaction." *Restatement* § 31 comment e. Thus, to the extent that defendant sought to recover an amount for the lodging benefit in excess of the amount for which he understood defendant to expect compensation, that is a harm that the regulatory scheme addresses and recovery beyond what equity permits.

To the extent that defendant seeks restitution solely for the value that plaintiff's wages could have supplied, however, nothing in our decision should create an incentive for future employers to ignore the requirements of ORS 652.610(3) when deducting the value of a "private benefit" from an employee's wages. On the contrary, our decision confirms that employers who fail to comply with the requirements of ORS 652.610(3) will be liable to the employee for the full amount of unpaid wages plus interest, for the statutory penalties, and for reasonable attorney fees.

We emphasize that plaintiff has identified no basis for declaring defendant's conduct to be inequitable apart from the legislature's decision to prohibit employers from implementing a wages-for-lodging credit *in this manner*.

We are sympathetic to the dissent's view that employer's violation is significant. *See* 366 Or at 128-29 (Nelson, J., dissenting). The requirements of ORS 652.610(3) and the legislature's statutory enforcement mechanism serve "to protect employees from unscrupulous or careless employers" who might otherwise deny employees the right to payment of their earned wages on a timely basis. *See Nilsen*, 253 Or at 269. But like other acts that statutes identify as unlawful, we look to the legislature for guidance regarding the appropriate consequences for the unlawful conduct. The legislature has specified in detail the consequences for an employer that fails to comply with the requirements of ORS 652.610(3) when it deducts wages to cover "lodging, meals or other facilities or services" that have been provided for the employee's private benefit, and those consequences do not include forfeiture of the "fair market value" of the benefit. ORS 653.035. Allowing defendant to recover the value of the lodging benefit through a claim in equity does not exempt employer from any form of liability or penalty that the legislature has chosen to impose as a consequence for employer's unlawful conduct, and we conclude that it is not appropriate to supplement those "penalties expressly announced by statute or regulation with a judge-made rule of forfeiture." *See Restatement* § 32 comment e.

In refusing to add forfeiture to the list of consequences that the legislature has specified for defendant's noncompliance with ORS 652.610(3), we are mindful of another caution offered in the *Restatement*, that "[f]orfeiture as a judge-created sanction is particularly to be avoided when it exacts a penalty disproportionate to the infraction, transferred as a private windfall to a party who has suffered no injury." *Restatement* § 32 comment e. The legislature has allowed employers to recover the value of the kind of "private benefit" conferred here, and the legislature has chosen a proportionate penalty when an employer attempts to recover that value without complying with ORS 652.610(3). The legislature has not made forfeiture a part of the proportionate penalty, and we decline to impose a rule of forfeiture as an additional judge-created penalty.

Thus, we generally agree with defendant that the trial court did not err in allowing defendant to prevail on

its counterclaims for the value of the "private benefit" that it provided. But we disagree in one respect. The judgment specifies that defendant has a "valid offset" in the amount of $43,403—the "value" of the lodging benefit that defendant provided to plaintiff but in excess of the value for which plaintiff expected to compensate defendant through his minimum wages. Under those circumstances, the equitable recoupment to which defendant is entitled for the value of the lodging benefit is limited to the value of the wages to which the jury found plaintiff is entitled for his labor.

We emphasize that our conclusion that defendant can prevail on its equitable counterclaim does not alter our conclusions that the trial court erred in awarding defendant attorney fees and erred in failing to identify plaintiff as the prevailing party on his first claim for relief and to award plaintiff attorney fees on that claim. Rather, in a wage action with both claims and counterclaims, the trial court must separately calculate all of the wages, penalties, interest, and attorney fees due on the plaintiff's claims, and all amounts due to the defendant on the counterclaims. ORS 20.077(2). Only then is it appropriate to compare the two recoveries and identify the party to whom a net money award is due. The case is remanded to the trial court for further proceedings consistent with this opinion, including to enter a judgment in favor of plaintiff on his first claim for relief, including his request for attorney fees; to deny defendant's counterclaim for attorney fees; and to address the remaining attorney fee issues as directed by the Court of Appeals.[16]

The decision of the Court of Appeals is reversed as to plaintiff's first claim for relief and defendant's equitable affirmative defenses and counterclaim for attorney fees, but

---

[16] In the Court of Appeals, plaintiff also challenged the trial court's ruling on his third claim for relief, which sought a penalty under ORS 652.615 for the unlawful deductions from wages. *See Jones*, 290 Or App at 820. The Court of Appeals held that the trial court was not required to base the penalty on "actual damages" because it concluded that plaintiff suffered no actual damages on his claim for unpaid wages. *Id*. The parties have offered no argument regarding whether our determination that plaintiff prevailed on his wage claim affects the ruling on plaintiff's penalty claim, and we decline to address that question.

it is otherwise affirmed. The judgment of the circuit court is affirmed in part and reversed in part.

**NELSON, J.,** dissenting.

The majority concludes that defendant's violation of ORS 652.610(3) by unlawfully withholding plaintiff's wages prevented defendant from asserting the value of the lodging benefit as an affirmative defense to defeat plaintiff's wage claim. I agree with that conclusion. 366 Or at 102. At the same time, however, the majority also has concluded that defendant's unlawful withholding of wages in violation of ORS 652.610(3) did not prevent defendant from prevailing on a counterclaim for the value of the lodging benefit. *Id*. I disagree with that proposition and therefore respectfully dissent.

The point at which the majority and I part company concerns the notion that denying equitable relief on an illegal contract is applicable only "when the contract, itself, is illegal in its object or purpose." 366 Or at 121. According to the majority, although the parties' agreement was unenforceable because defendant failed to comply with the legally required terms for withholding wages, the agreement was nevertheless "intrinsically unobjectionable" because it sought an otherwise legal result, 366 Or at 123, a fact that, in the majority's view, now validates the equitable recovery sought by defendant. As section 32 of the *Restatement (Third) of Restitution and Unjust Enrichment* (2011) makes clear, however, that rule holds true only to the extent that an "allowance of restitution will not defeat or frustrate the policy of the underlying prohibition." In my view, allowing defendant in this case to prevail on its counterclaim—which arises directly from defendant's wholesale violation of Oregon's wage deduction statutes—will indeed frustrate Oregon's wage policies by allowing important wage-earner safeguards to be co-opted to the often-contrary purposes of errant wage-payers.

As a threshold matter, it is worth noting that, although the majority has extensively cited the *Restatement (Third) of Restitution and Unjust Enrichment* (2011), it has nevertheless omitted discussion of important limiting

principles that apply to that area of law. Among those principles is this:

> "The fact that a recipient has obtained a benefit without paying for it does not of itself establish that the recipient has been unjustly enriched."

*Restatement* § 2 (1). In that regard, the *Restatement* clarifies that "[t]o be the subject of a claim in restitution, the benefit conferred *must be something in which the claimant has a legally protected interest, and it must be acquired or retained in a manner that the law regards as unjustified.*" *Id.* at comment b (emphasis added). As I explain in greater detail below, because defendant failed to adhere to the requirements for (1) lawfully paying plaintiff a minimum wage and (2) lawfully deducting plaintiff's housing expense from that minimum wage, I believe that defendant was precluded from claiming a legally protected interest in, and restitution of, that deduction for the housing expense following plaintiff's justifiably initiated wage action against defendant.

Plaintiff has argued, in part, that the salary deductions relied on by defendant as the basis for its counterclaims were themselves prohibited as unlawful under ORS 652.610. I agree. The statutes and rules controlling wage deductions in Oregon demonstrate that, while deductions for food, lodging, and other services can, indeed, serve as credits against an employee's minimum wage, they can only function as such when the mandatory requirements of ORS 652.610(3)(b) have been met. To recap briefly, that statute requires that such deductions be (1) voluntarily authorized in writing by the employee, (2) furnished for the employee's benefit, and (3) recorded in the employer's books. Indeed, OAR 839-020-0025(5)(d) specifically provides that the fair market value of employer-furnished meals, lodging, facilities, and services can be deducted from an employee's minimum wage only when, together with other requirements, "[t]he meals, lodging, or other facilities and services are provided in a lawful manner." Here, by admitting its failure to follow the wage deduction tenets otherwise required by Oregon law, defendant also tacitly admitted to unlawfully providing plaintiff with lodging to the extent that the value of that lodging was expected to be deducted from plaintiff's minimum wage.

The unlawfulness of that wage deduction finds further support in the fact that violations of ORS 652.610 are subject to criminal penalties as well as private causes of action. *See* ORS 652.990(8) ("Violation of ORS 652.610 or 652.620 is a Class D violation."). Viewed from that perspective, defendant's failure to adhere to the requirements of ORS 652.610 amounted to something more than simply a record-keeping misstep; it constituted a *per se* illegal act not unlike those set out in the Oregon Criminal Code.

That observation is particularly apt here, given that the only basis for the wage deduction in this case—*i.e.*, the parties' employment contract—is no longer recognized for that purpose under Oregon law. There was, to be sure, a time when Oregon law expressly permitted employment contracts to authorize deductions from an employee's wage. In that regard, *former* ORS 652.610(3)(d) (1979) allowed employers to deduct sums from their employees' wages if "[t]he deduction is pursuant to an individual employment contract with the employer[.]" In 1981, however, the legislature removed that subsection from the provisions governing wage deductions, while at the same time amending *former* ORS 652.610(3)(b) (1979) to predicate employee wage deductions on written employee authorizations. *See* Or Laws 1981, ch 594, § 5 (amending statute). Those amendments underscore a clear legislative intent to no longer recognize the validity of employee wage deductions that are based solely on the terms of an employment contract. In this case, the parties' employment contract provided the only support for the lodging-for-labor wage deductions that underpinned defendant's recovery below. Because that contract was not a lawful ground for such deductions, it is not incorrect to view the deductions at issue here as similarly unlawful.

That perspective, in turn, leads me to conclude that allowing defendant a recovery based on such deductions would be improper, given that those deductions were unlawful insofar as they were unauthorized by, and contrary to, the public policy informing Oregon's wage and hour statutes. On review, defendant—having conceded that it owed plaintiff unpaid minimum wages and statutory penalties—nevertheless contended that, without the favorable trial court judgment it received below, plaintiff would reap the

benefit of his minimum wage award *and* free rent at defendant's expense. The majority's position appears to be that such an outcome is outweighed by the specter of an inequitable windfall in plaintiff's favor.

Under section 63 of the *Restatement (Third) of Restitution and Unjust Enrichment*, a claimant's own improper conduct may preclude restitution. That section provides:

> "Recovery in restitution to which an innocent claimant would be entitled may be limited or denied because of the claimant's inequitable conduct in the transaction that is the source of the asserted liability."

The principle animating that statement is "one of judicial forbearance, and its concern is with the disqualification of the claimant." *Id.*, comment a. "The idea is that a person who engages in inequitable conduct may forfeit the right to a judicial determination of what 'equity and good conscience' require of the other party to the transaction." *Id.* Thus, as explained in comment c of the *Restatement*, section 63 was added and is separate from section 32, on which the majority relies, because "equitable disqualification" under section 63 "will potentially block other restitution claims as well." In other words, the "potential reach of equitable disqualification is thus broader than a mere refusal to enforce or relieve against illegal transactions." *Id.*

I, for one, am happy to weigh the equities arising from defendant's unlawful wage deductions against the clear requirements of the wage and hour statutes. The stated policy goals underlying Oregon's wage and hour statutes have long been simple ones: facilitate wage earners' prompt collection of wages owed them and protect them from employers who might leverage a position of economic superiority to forestall the collection of those wages. This court acknowledged as much over 50 years ago in *State ex rel Nilsen v. Ore. Motor Ass'n.*, 248 Or 133, 138, 432 P2d 512 (1967), when it observed that the

> "policy of [ORS 652.310 through 652.410] is to aid an employe [*sic*] in the prompt collection of compensation due him and to *discourage an employer from using a position of*

*economic superiority as a lever* to dissuade an employe [*sic*] from promptly collecting his agreed compensation."

(Emphasis added.) *See also Lamy v. Jack Jarvis & Company, Inc.*, 281 Or 307, 313, 574 P2d 1107 (1978) (noting that in typical employee/employer relationship marked by disparity in economic power between the parties, central purpose of wage and hour statutes was to assure prompt payment of wages).

And in furthering a level playing field between employers and employees in matters concerning wage claims, Oregon's wage and hour provisions maintain a unique primacy *vis-à-vis* workplace contracts that might contravene those protections. That is so because ORS 652.360(1) expressly renders those statutes superior to *any contrary means* that an employer might apply to remove itself from the ambit and effect of the wage and hour provisions:

> "An employer may not by special contract or *any other means exempt the employer from any provision of or liability or penalty imposed by ORS 652.310 to 652.414 or any statute relating to the payment of wages*, except insofar as the Commissioner of the Bureau of Labor and Industries in writing approves a special contract or other arrangement between the employer and one or more of the employer's employees."

(Emphasis added.) This court has held that that statutory proscription preventing employers from exempting themselves from "any provision" relating to the payment of wages encompasses, among other things, contract terms that are contrary to those wage provisions. *See Taylor v. Werner Enterprises, Inc.*, 329 Or 461, 468-69, 980 P2d 384 (1999) (holding that, under ORS 652.360, where parent company hired long-haul truck driver and wage statutes defined "employer" as one so engaging an employee, the fact that the employment contract expressly identified parent company's wholly owned subsidiary as truck driver's employer did not exempt parent company from liability for wage claim violation).

The rule articulated in ORS 652.360(1) and exemplified in *Taylor* is applicable here. Although defendant was free to enter into an agreement with plaintiff to trade

its lodging as consideration for plaintiff's labor, defendant was not free to do so under a contract that ignored virtually every minimum wage and wage deduction requirement put in place by the legislature to protect wage earners like plaintiff from harm at an employer's hand. And in this matter, the harm to plaintiff was something more than simply defendant's failure to keep proper records. At trial, the jury determined that the minimum wage owed plaintiff for the 36 months he worked for defendant was $38,642, while the fair market rental value of the trailer defendant had supplied plaintiff over the same period was $43,403. The resulting difference of $4,731 calculates to approximately a net loss of $131 that plaintiff would have owed each month for the privilege of being defendant's employee were it not for the good offices of the majority on review. Nothing in the record, however, suggests that plaintiff was ever informed of that formulation prior to, or during, his term of employment. Had defendant followed the law governing wage deductions in Oregon, however, plaintiff would have immediately been put on notice regarding the actual wage calculus being applied to his situation when he signed a written authorization for his wage deductions. And if not at that time, then certainly at his first scheduled payday, when defendant was required to facilitate a full settlement with plaintiff for any sum plaintiff may have owed his employer from the preceding pay period. *See* OAR 839-020-0025(4) (so stating).

Had those procedures been followed as the law required, plaintiff would have had the option of either (1) knowingly remaining in defendant's employ under terms that were clear and clearly acceptable to him, (2) renegotiating his employment contract, or (3) quitting his job, all of which would have been preferable to having the true cost of his employment kept from him. While the majority has properly spared plaintiff from the *sub rosa* accrual of a $4,731 obligation to defendant in this case, there is no guarantee that similarly situated plaintiffs will fare as well in future cases, particularly ones in which the agreed-upon terms of employment are different, ambiguous, or nonexistent.

Because Oregon's wage and hour statutes were enacted to protect wage earners from employers who might use their positions of economic superiority to hinder the

payment of such wages, those statutes represent sound public policy geared toward remediating inequities arising from that power disparity. As such, those statutes are subject to the "ancient maxim that remedial statutes are to be construed liberally to effectuate the purposes for which they were created." *Halperin v. Pitts*, 352 Or 482, 495, 287 P3d 1069 (2012). *See also Sunshine Dairy v. Peterson et al.*, 183 Or 305, 317, 193 P2d 543 (1948) ("A remedial statute should receive liberal construction so as to afford all the relief within the power of the court which the language of the act indicates that the legislature intended to grant."); *Stanley v. Smith*, 15 Or 505, 510, 16 P 174 (1887) (remedial statutes "are to be liberally construed and applied for the purpose of giving full effect to the legislative intent"). In wage-related matters such as this one, that means, if nothing else, that "the offending party should not be allowed to take advantage of its own wrong in order to escape liability." *Turney v. J. H. Tillman Co.*, 112 Or 122, 130, 228 P 933 (1924). Although the majority decision in this case ensures that employer will not entirely escape liability, it also enables employer to leverage its own wage violations to obtain a recovery that Oregon's wage policies clearly preclude.

As a result, in situations like this—where an employer has unlawfully deducted the cost of employer-supplied food or lodging from an employee's wage and then counterclaimed in a subsequent wage action to recover sums arising from those unlawful deductions—I submit that employer's counterclaims should give way to the clear public policy concerns ensconced in Oregon's wage claim statutes. In that regard, it is important to emphasize that this is not a case in which an employer substantially complied with Oregon's wage deduction requirements save for some *de minimis* shortcoming: Here, defendant failed to follow *any* of the statutory wage deduction provisions enacted to protect plaintiff.

This court's case law makes clear that "Oregon does not enforce contracts that are unconscionable or otherwise violate public policy[.]" *Trinity v. Apex Directional Drilling LLC*, 363 Or 257, 261, 434 P3d 20 (2018). In determining whether an agreement is illegal because it is contrary to public policy, the test is "the evil tendency of the contract and

not its actual injury to the public in a particular instance." *Bagley v. Mt. Bachelor, Inc.*, 356 Or 543, 552, 340 P3d 27 (2014). Here, the "evil tendency" arising out of defendant's failure to follow the statutes regulating wage deductions for employees was at least two-fold. First, it served to conceal from plaintiff the true cost of his employment with defendant until it was too late to amend the terms giving rise to those costs. And second, the effect of allowing the counterclaim as "lawful" permits defendant to use its admittedly unlawful actions to recover what Oregon's wage laws otherwise prohibited. As a matter of public policy, such outcomes are matters that this court should take steps to repudiate, not ratify.

At the end of the day, the equitable nature of defendant's counterclaims should not be allowed to override the overarching purpose of this state's wage and hour provisions. As a public policy matter, it is well within the purview of this court to excuse the performance of a contractual obligation that is contrary to the public interest. *Wright v. Schutt Const. Co.*, 262 Or 619, 621, 500 P2d 1045 (1972). We should do so here regarding the contractual obligation that, according to the majority, now subjugates plaintiff's recovery to defendant's counterclaim. Because we do not, however, I respectfully dissent.

Nakamoto, J., joins in this dissenting opinion.