Argued September 15, affirmed October 6, 1954

MOORE *v*. STATE FINANCE COMPANY

274 P. 2d 559

*Roy Harland,* of Salem, argued the cause and filed a brief for appellant.

*James W. Walton,* of Corvallis, argued the cause for respondent. On the brief were Robert G. Ringo and Richard Mengler, of Corvallis.

Before WARNER, Acting Chief Justice, and ROSSMAN and PERRY, Justices.

ROSSMAN, J.

This is an appeal by the defendant from a judgment, based upon a verdict, in the amount of $398.22 which the circuit court entered in favor of the plaintiff. The action was instituted by the plaintiff to recover the reasonable value of plumbing material and labor which the plaintiff, according to his complaint, supplied upon the order of the defendant.

The defendant-appellant submits three assignments of error which read as follows:

"The Court erred in admitting in evidence respondent's Exhibits A and B, the same being ledger sheets."

"The Court erred in denying appellant's motion for an order of involuntary non-suit against the respondent, which motion is as follows, to-wit: * * *."

"The Court erred in denying appellant's motion for a directed verdict. Appellant's motion for such directed verdict is as follows, to-wit: * * *."

The defendant-appellant's brief states:

"As the Court will observe, the motion for directed verdict is based upon the same identical grounds as the motion for involuntary non-suit."

Due to its length, we shall not copy herein the motion for an involuntary nonsuit. Its grounds are set forth in the two following propositions which we quote from the appellant's brief:

"For respondent to recover there must be a contract, express or implied, proof of either a contract made by the parties or facts creating a liability by implication of law."

"It is essential to recover for labor and materials that there be a request for performance of such labor and furnishing of such materials by the party sought to be charged."

The disposition of the assignments of error will be facilitated by a review of the evidence.

The plaintiff, A. A. Moore, is engaged in the plumbing business. The business of the defendant, State Finance Company, centers in real estate. A witness declared that it makes real estate mortgage loans and acts as a real estate broker. The defendant's president is Mr. Ernest Miller.

In 1947 the defendant owned a tract of 16 lots in Corvallis which came to the attention of one Charles A. Petrehn, who, seemingly, was a building contractor. Although the evidence upon the subject is scant, it shows that a decision was reached by someone that 16 houses should be built upon the lots. January 7, 1948, the defendant conveyed the lots to Petrehn, and thereupon the construction work was begun. The charge for labor and material which underlies this case was made by the plaintiff after he had performed the plumbing work upon one of the 16 houses. The plaintiff accounted, with the following explanation, for the fact that he performed the plumbing work upon the houses:

"To start with, Mr. Pethren [sic] started to build this group of sixteen houses out here and

through him and Mr. Miller they assigned us to do the work, the plumbing, on the houses, * * *.''

Petrehn needed mortgage loans in order to render it possible for him to proceed with his venture. The record indicates that he obtained the needed mortgage loans from the Sun Life Insurance Company of Canada. Although the information afforded by the record is slight, it suggests that the defendant was the medium through which Petrehn obtained the loans.

Conrad Paulson, a witness for the defendant, who identified himself as an employee in the defendant's mortgage loan department, testified:

"The State Finance Company besides its real estate mortgage department does have other businesses, real estate brokers, but the real estate mortgage department handles real estate mortgages on various properties and services such loans for various life insurance companies constituting a primary part of its real estate mortgage department."

He then went on:

"In this particular case, a Mr. Pethren [sic] made applications, obtained FHA approval of proposed plans for construction of houses for sale and with the ownership of the property mortgages were given, notes and mortgages, mortgage maximum amount allowable under FHA terms and these mortgages were placed of record and as called upon the State Finance Company advanced funds for the purposes of construction.

"Q To whom were those mortgages given?

"A The mortgages ran from Mr. Pethren to the Sun Life Insurance Company of Canada.

"Q How many of such mortgages were there?

"A There were sixteen individual houses concerned."

It will be observed that Mr. Paulson testified that the mortgagee of the 16 mortgages was the Sun Life Insurance Company of Canada. Mr. Paulson was the only witness who gave any testimony upon that subject. The mortgages were not produced at the trial. Mr. Miller did not testify. The briefs of both parties state that the defendant was the mortgagee. In view of the fact that the briefs repeatedly state that the defendant was the mortgagee, we examined the record with care. Our examination has disclosed nothing whatever which indicates that the defendant was the mortgagee. Paulson, the sole witness upon the subject, declared that the mortgagee was the Sun Life Insurance Company. After he had made that statement, and while he was still upon the witness stand, a colloquy occurred between counsel, in the course of which defendant's attorney declared: "The witness has already testified that Mr. Petrehn gave these mortgages, sixteen in number, to the Sun Life Insurance Company."

The above is substantially all of the information which the record furnishes about the mortgages. It will be observed that "as called upon, the State Finance Company advanced funds for the purposes of construction." No explanation was given for that course of procedure. It is clear that the defendant was not the mortgagee. Possibly the defendant was the agent of the mortgagee. When the defendant made the advances to the builder, it did so with its own checks drawn against its own funds. If the mortgagee had forwarded to the defendant the money which it paid to the builder, no witness mentioned the fact.

Mr. Paulson gave the following testimony:

"Q Do you have any evidence to show that at any time you instructed Mr. Moore about your

particular status in the situation that you were the mortgagee?

"A   By recording the mortgage."

In other words, the fact that the mortgages were recorded was the sole evidence upon which the defendant relied to charge the plaintiff with notice of the defendant's interest. But if the records has been consulted they would not have disclosed that the defendant was the mortgagee; they would have shown that the holder of the mortgages was the Sun Life Insurance Company.

Before Petrehn had completed construction of the houses he found it necessary to withdraw from the undertaking, and on April 2, 1948, he and his wife conveyed the 16 properties to one C. F. Gillette, who continued the construction work.  Gillette finally completed the houses, but before he had sold any of the houses he met with financial difficulties.  January 4, 1949, Gillette conveyed the properties to the defendant. The account mentioned in the complaint was incurred in June, 1948, while Gillette was proceeding with the construction project.

According to uncontradicted evidence, Mr. Miller visited the defendant's shop many times while the work upon the houses was in progress.  The visits began when Petrehn was in charge of the project. When Petrehn found it necessary to abandon the undertaking and convey the properties to Gillette, Mr. Miller brought Gillette to the plaintiff and made the two acquainted.  According to the plaintiff's uncontradicted testimony, Miller at that time said that "we were to take over, under Gillette's supervision." By "we" reference was made to the plaintiff.  Going on, the plaintiff attributed to Miller the following directions: "We should go ahead and work it under Gillette the

same as we had under Pethren." We quote further from the plaintiff's testimony:

"Q  Can you tell us approximately when Mr. Miller was in there?

"A  Oh, I imagine it was in May or June, I believe, in 1949. It's pretty hard to tell.

"Q  Was the work already under way up there?

"A  It had been for many months.

"Q  Had you received any payments on this work?

"A  Several.

"Q  And who from?

"A  State Finance Company. I believe the checks were signed by Mr. Miller—Ernie Miller, and there was only State Finance, as I recall, on the checks.

"Q  Now, when he was in there with Mr. Gillette, did he request you to continue any work?

"A  He did.

"Q  And were there any statements made about who would pay, who requested you to continue the work?

"A  Miller.

"Q  And were there any statements made about who was going to pay, was there any conversation?

"A  Wouldn't recall that he actually come out and said that you go ahead and do the work and I'll pay it, I wouldn't recall that, but there was no indication given that they wouldn't pay it.

MR. HARLAND: We object to the further answer just there where he stated his own conclusion.

THE COURT: Yes, that objection will be sustained."

Although the plaintiff, in his above-quoted testimony, spoke of 1949, it is clear that he meant 1948.

As is evident from the foregoing, the plaintiff, from the time that the construction of the houses was begun,

sent monthly statements of the account to the defendant, and received from the defendant remittances for the sums owing. The statements entered as the debtor the name of the defendant. Mr. Miller was aware of the statements and of the fact that they entered as debtor the defendant. Payment of the statements was made, as we have said, with the defendant's checks drawn against its bank account and signed by Mr. Miller. During his visits to the plaintiff's shop, Mr. Miller made no objection to the fact that the statements were issued in the defendant's name. If he ever commented upon the fact that the statements entered the defendant's name as debtor and were mailed to it, the incident was not divulged during the trial.

The plaintiff swore that he was unfamiliar with the condition of the title to the 16 properties. He gave the following testimony:

"So far as knowing, I don't know whose name it was in the Court House, no. All I know is we were doing the work for State Finance.

\* \* \* \* \*

"Well, I knew—I don't know who was abuilding it. State Finance was putting up the money. That was all that we were interested in. We didn't care who was going to eventually own them. As I understood it, State Finance was building those houses for resale purposes. That was as far as I knew and State Finance were the guys that were doing the building, as I understood it."

When the defendant received the monthly statements, it sent its check in the required amount to the plaintiff. It appears that upon at least one occasion the plaintiff sent to Gillette a statement similar to the one which it had sent to the defendant, but in it inserted Gillette's name as the debtor. The plaintiff

explained that occurrence by stating that since he was paid monthly upon a basis of total work done and the amount of materials installed, it was necessary to secure Gillette's approval before forwarding the monthly statement to the defendant.

The plaintiff completed the plumbing work and when the house represented by the account in litigation was fully constructed, the balance was owing to the plaintiff for which the challenged judgment was entered.

Apart from minor details, the above reflects the facts developed upon the trial.

We shall now consider the first assignment of error. In its support the defendant-appellant presents the following single proposition: "The evidence is not sufficient to show that appellant requested that such materials be furnished and such services performed."

The plaintiff's bookkeeper, Margaret Cody, prepared the two ledger sheets which constitute the subject matter of the first assignment of error. The ledger sheets are of the familiar kind. At the top of the sheets with which this case is concerned Miss Cody wrote as the name of the debtor "State Finance Company". Under that name are ruled columns which are headed by these titles: Date, Folio, Debit, Credit, and Balance. In those columns Miss Cody made entries. She swore that she made them from the daily invoices and that she did so whenever new items appeared.

Section 2 of the Uniform Business Records as Evidence Act [ORS 41.690] reads as follows:

"A record of an act, condition or event, shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testified to its identity and the mode of its preparation, and if it was made in the regular course of business, at

or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.''

We believe that the evidence which was before the trial judge when he overruled the defendant's objections to the two ledger sheets complied with the requirements of the section of our laws just quoted. Account books are original evidence and are not excluded because other evidence of the facts revealed by them is available: *Radke v. Taylor,* 105 Or 559, 210 P 863, 27 ALR 1423. During the argument before this court the defendant urged that the entry in a ledger sheet of the name of the purported debtor is inadmissible for the purpose of proving that the person charged was, in fact, the debtor. We think that the words of the act above quoted refute that contention. See, also, *Ziliak v. Schafer Milling Co. v. Moore,* 222 Ala 254, 131 So 798; *Douglas v. Parker Commercial Co.,* 28 Ariz 47, 235 P 148; *MacFayden v. Paul,* 102 Conn 243, 128 Atl 650; *Haygood v. E. B. Clark Co.,* 27 Ga App 101, 107 SE 379; *Sneider v. Big Horn Milling Co.,* 28 Wyo 40, 200 P 1011; *James C. Goff v. Lunn,* 48 R I 416, 137 Atl 879. According to our belief, the plaintiff presented sufficient evidence to show that the defendant requested the plaintiff to supply the materials and labor which constituted the subject matter of the charge. The court did not err when it overruled the defendant's objections to the two ledger sheets. This assignment of error is without merit.

We turn now to the second and third assignments of error. They are quoted in a preceding paragraph and are based, respectively, upon the denials of the motions for a nonsuit and a directed verdict. In support of those assignments of error, the defendant con-

tends, as we have already stated, that before it could be liable for the labor and material which the plaintiff furnished, the evidence must indicate (a) "a contract, express or implied, proof of either a contract made by the parties or facts creating a liability by implication of law" or (b) "a request for performance of such labor and furnishing of such materials by the party sought to be charged."

The review of the evidence which is set forth in preceding paragraphs shows, according to our belief, that the defendant ordered the plaintiff to perform the plumbing work for which the contested charge was made. The first order was given by the defendant when construction of the houses was begun. Later, when Petrehn quit the project and Gillette succeeded him, the order was repeated. While the work was in progress monthly statements, showing the condition of the account, were mailed to the defendant. These statements, as we have shown, contained the defendant's name as debtor. Based upon them, the defendant regularly made remittances with its own check, drawn against its own funds and signed by Mr. Miller, its executive head. Mr. Miller visited the plaintiff in the latter's shop frequently and, although in those visits the work and the statements were mentioned, no intimation was ever made that the defendant was not the debtor and that the statements should not contain its name as the party liable for the account.

■ Obviously, it was unnecessary for the defendant to own the houses in order to be liable for the work which it directed the plaintiff to perform. When the defendant ordered the plaintiff to install the plumbing in the houses, it rendered itself liable, not in a secondary capacity, but as the original and primary debtor. In *Eilertsen v. Weber,* 198 Or 1, 255 P2d 150, we recently

considered and set forth the principles of law which govern situations such as the one now before us. We need not repeat those principles herein. They support the plaintiff's claim. It is our belief that the second and third assignments of error lack merit.

The above disposes of all the contentions presented by the appellant. The judgment of the circuit court is affirmed.