BASTIAN, *Respondent,*
*v.*
HENDERSON, *Defendant,*
RUEMAR, INC., *Appellant.*
(TC 74-789-L, SC 24382)
561 P2d 595

Michael Henderson, Grants Pass, argued and filed briefs for appellant.

Lynn M. Myrick, of Myrick, Coulter, Seagraves, Nealy & Myrick, Grants Pass, argued the cause for respondent. On the brief was Lynn M. Myrick, of Myrick, Coulter, Seagraves, Nealy & Myrick, Grants Pass.

Before Denecke, Chief Justice, and Tongue, Linde and Bradshaw, Justices.

TONGUE, J.

## TONGUE, J.

This is an action by a building contractor against the owner and tenant of a building in Grants Pass for the reasonable value of work, labor and materials furnished by plaintiff at the request of the defendants in the construction of an addition to the building and in remodeling work on the building. The case was tried before the court, without a jury. Judgment was entered against both defendants in the sum of $6,497.44. It was ordered, however, that plaintiff be estopped from enforcing the judgment against the owner, defendant Henderson. The tenant, Ruemar, Inc., appeals. We affirm.[1]

■ Plaintiff contends that defendant Ruemar's five assignments of error fail to comply with the requirements of Rule 6.18 of the Rules of Procedure of this court.[2] We hold, however, that the first four of the assignments of error are sufficient to raise the follow-

---

[1] No issue is raised on this appeal relating to the order by the trial court that plaintiff be "estopped from enforcing said judgment against Defendant Thomas W. Henderson."

[2] Rule 6.18 of the Rules of Procedure of this court provides:

"* * * *The assignment of error must be specific and must set out verbatim the pertinent portions of the record.* Assignments of error which the court can consider only by searching the record for the proceedings complained of will not be considered." (Emphasis added)

Defendant Ruemar's assignments of error are as follows:

(1) "The Court erred in failing to sustain defendant Ruemar's alternate plea of estoppel. * * *"

(2) "The Court erred in imposing liability upon defendant Ruemar when the complaint failed to state a cause of action against defendant Ruemar."

(3) "The Court erred in failing to find that the reasonable value of the services and materials provided by plaintiff were as expressed by the bid of plaintiff prior to commencement of construction on the addition."

(4) "The Court erred in finding for plaintiff on quantum meruit in regard to the extras supplied by plaintiff without requiring plaintiff to segregate the extras and proving the reasonable value of the material and labor included in the extras."

(5) "The Court erred in rendering judgment based on evidence outside the scope of pleadings."

ing questions, which we believe to be decisive in this case:[3]

(1) Did the complaint allege sufficient facts to support a cause of action in quantum meruit by plaintiff (as a building contractor), against defendant Ruemar (as a tenant)?

(2) Was there sufficient evidence to support the judgment? More specifically:

(a) Was there substantial evidence to support the findings by the court "[t]hat there was no express or written contract between Plaintiff and Defendants for such work, labor and materials"?

(b) Was there substantial evidence to support the finding by the court that such "work, labor and materials were furnished" at the instance and request of Defendants (including defendant Ruemar)?

(c) Was there substantial evidence to support the finding by the court that the reasonable value of such work, labor and materials was the sum of $13,829.82, of which $6,497.44 remained due, owing and unpaid?

(3) Did the court err in failing to sustain defendant Ruemar's equitable defense of estoppel?

## Summary of the facts.

After reviewing the testimony and exhibits we find that the facts which we believe to be material to these issues are accurately stated in the following excerpts from the written opinion by the trial court:

"* * * Plaintiff is a general contractor who performed work on the building in question. The Defendant Thomas W. Henderson is the owner of the building and the lessor of the property to the Defendant Ruemar, Inc. For all practical purposes the Defendant Ruemar, Inc. is George Thompson. Mr. Thompson is a certified public accountant and a member of an accounting firm in Grants Pass. As such accountant, he performed accounting services for the Plaintiff Bastian and gave the

---

[3] Cf. Elvalsons v. Industrial Covers, Inc., 269 Or 441, 445, 525 P2d 105 (1974).

We refuse, however, to consider defendant's fifth assignment of error because it attempts to raise a question relating to evidence which is not identified. Neither is any objection to such evidence identified. The assignment of error is in clear violation of Rule 6.18.

Plaintiff Bastian advice from time to time on a method of charging for his services.

"Apparently the Defendant Thompson also kept books for the former operation of the property involved known as Taco Tree. For some reason Mr. Thompson became interested in the operation of the restaurant and concluded that certain changes would have to be made in order to make the operation profitable. He desired to build onto the building by adding a family dining room and discussed the matter with the Plaintiff Bastian.

"Thompson apparently was interested in a building known as the A and W Root Beer for architectural design and construction. He approached Mr. Henderson to see if Mr. Henderson would finance the remodeling of the building and take the cost of construction out in additional rent. Mr. Henderson agreed to finance the improvement to the extent of $8,000, although there was discussion of expending the sum of $8,500.

"The figure of $8,000 or $8,500 was apparently derived from a sheet of paper which Mr. Bastian furnished to Mr. Thompson and which was admitted in evidence as Plaintiff's Exhibit 56. This was an estimate sheet in which the figure of $7,955 was totaled.

"It is the contention of Thompson that there was a contract entered into between him and the Plaintiff Bastian to do the contemplated work for the sum of $8,000 based on this estimate sheet, and Mr. Henderson agreed to the figure of $8,000. No plans or specifications of any kind were prepared except for a sketch drawn for Bastian which, according to Plaintiff, was to indicate the contour of the roof line. * * * Thompson assumed that he had a firm contract with Bastian for not more than $8,000 based upon the rough estimate which the Plaintiff Bastian furnished him. Bastian's position is that the estimate sheet was only an estimate, and since there were no details the contract was one for the reasonable value of the work actually performed.

"* * * * *

"As it turned out, the total amount of the services performed by the Plaintiff was the sum of $13,829.82, of which he has received the sum of $7,332.38, leaving a balance due of $6,497.44 for which he seeks recovery.

"* * * From the very first it was found that things

[ 543 ]

would be different than planned as it was necessary to pour an entirely new slab of concrete. From time to time various additions were made to the plans, such as block planters, screens for sheltering the garbage area, divider walls, paneling of blocks, light fixtures which were selected by Mrs. Thompson and approved by Mr. Thompson. Also it is apparent to the Court that a considerable amount of work in the kitchen not contemplated by any phase of the contract or estimates was performed on the orders of Mrs. Thompson, and it appears that Mr. Thompson gave Mrs. Thompson carte blanche for whatever she felt it was necessary to do. In addition, air conditioning and heat were installed and many changes and additions were made which could not possibly have been contemplated.

"* * * * *

"The Defendant Henderson did not enter into any of the negotiations for the construction of the building. He simply approved the plans submitted by Thompson and the price given to him by Thompson and agreed to pay a certain portion thereof. * * *"

## 1. *The sufficiency of the complaint.*

Defendant Ruemar contends, by its second assignment of error, that as a tenant, rather than as an owner, it cannot be liable in an action of quantum meruit "concerning the reasonable value of improvements to real property"; that Ruemar only "requested plaintiff to submit a bid for the work"; and that plaintiff knew that Henderson was owner of the property, citing *Porter Const. Co. v. Berry et al,* 136 Or 80, 298 P 179 (1931).

The complaint in this case alleges that

"* * * Plaintiff, at the special instance and request of the Defendant, THOMAS W. HENDERSON *and RUEMAR, INC.,* furnished work, labor and materials to be used, and which were used, in the repair and remodeling of, and the addition to, the improvement located at 201 S.E. Park Street, Grants Pass, Oregon." (Emphasis added)

There was no demurrer to this complaint.

■■ The contention by defendant Ruemar that it was a tenant, rather than owner, of the building, raises a question of fact, and one that goes outside the allegations of the complaint. In the absence of a timely demurrer, a pleading is to be construed liberally in favor of the pleader.[4] Thus construed, we hold that it is a sufficient allegation to hold defendant Ruemar liable in an action for quantum meruit, regardless of whether Ruemar was a tenant (which is not alleged).

■■ The basis for such an action is that one who requests another to provide beneficial work, labor and materials impliedly promises to pay the reasonable value of such work, labor and materials.[5] Thus, a tenant who makes such a request may be liable in an action for quantum meruit involving improvements to the real property.[6] *Porter Const. Co. v. Berry et al, supra,* cited by defendant Ruemar, is not in point because the "nonowner" defendant in that case received no benefit from the transaction and acted as an agent for the owner, rather than in an individual capacity, in dealing with the plaintiff, who knew that he was acting as an agent and admitted that he had "looked" to the owner for payment. (See 136 Or at 88-91)

Defendant Ruemar's further contention that it only "requested plaintiff to submit a bid for the work" also raises a question of fact, rather than one of pleading.

2. *The sufficiency of the evidence.*

Defendant Ruemar contends, by its third and fourth assignments of error, that the court erred in failing to find "that the reasonable value of the services and materials provided by plaintiff were as expressed by the *bid* of plaintiff prior to commence-

---

[4] *See Rohner et ux v. Neville,* 230 Or 31, 33, 365 P2d 614, 368 P2d 391 (1962).

[5] *See Cronn v. Fisher,* 245 Or 407, 416-17, 422 P2d 276 (1966), and *In re Estate of T. A. Stoll,* 188 Or 682, 696, 214 P2d 345, 217 P2d 595 (1950), and cases cited therein.

[6] *See Moore v. State Finance Co.,* 202 Or 265, 275, 274 P2d 559 (1954).

ment of construction" and in failing to "requir[e] plaintiff to segregate the *extras* and prov[e] the reasonable value of the material and labor *included* in the extras." (Emphasis added)

If, however, there was substantial evidence to support findings by the trial court that "there was no express or written contract" because the work was not done on the basis of the acceptance by defendants of a firm "bid" by plaintiff, but that what plaintiff submitted was no more than an "estimate" of the total costs, rather than a firm bid, it would follow that the trial court did not err in failing to find that the reasonable value of the services was as expressed in what defendant contended to be "the bid of the plaintiff." For the same reasons, if the work was not done under an express contract for a fixed price based upon the acceptance of a firm bid, the trial court did not err in failing to require plaintiff to "segregate" as "extras" all work not included in that bid and to prove their reasonable value as "extras."

Similarly, if there was substantial evidence to support the finding by the trial court that all of the work, labor and materials were furnished at the request of "defendants," including Ruemar, as a tenant, it would follow that defendant Ruemar would be liable on a quantum meruit basis for the reasonable value of all of such work, regardless of the figure found by the court to have been submitted as an "estimate," rather than as a firm bid, and including work considered by Ruemar to be "extras," without the necessity of segregating the value of such work.

■ We have examined the entire record and find ample evidence to support both findings of fact by the trial court. First of all, the evidence is clear that it was Mr. Thompson (owner of defendant Ruemar, Inc.), who maded the initial contact with plaintiff and requested plaintiff to build the "addition" discussed as a basis for the submission by plaintiff of his original "estimate" and that it was Mr. Thompson and his wife who also

requested plaintiff to do the additional work considered by defendant Ruemar to constitute "extras."

As to whether the figure of $7,955 as originally submitted by plaintiff was a "firm bid" or no more than an "estimate," we find that there is substantial evidence to support the following observations by the trial court in his written opinion:

> "* * * No plans or specifications of any kind were prepared except for a sketch drawn for Bastian which, according to Plaintiff, was to indicate the contour of the roof line. It seems odd to the Court that if it was to more or less duplicate the A and W Root Beer building that no further inquiry was made concerning plans and specifications for that building nor cost estimates for construction prepared. * * *
>
> "* * * * *
>
> "It is the Court's conclusion that it is not reasonable to believe that an experienced accountant and an experienced builder would believe under the circumstances that a contract for the performance of an unknown amount of work and labor and the furnishing of an unknown amount of materials could be the basis for a firm contract. The Court therefore concludes that the agreement between the parties was that Mr. Bastian was to perform the necessary work and that the price to be paid was a reasonable price, hopefully somewhere within the range of the estimate made by Bastian."

Upon examining the record, we also find considerable additional evidence which need not be detailed and which supports this same conclusion.

■ The remaining issue would then be the reasonable value of all of the work, labor and materials so furnished by plaintiff. On that issue we find, upon examining the record, that there was substantial evidence to support the finding by the trial court that the reasonable value of the work, labor and materials so furnished by plaintiff was the sum of $13,829.82, of which $6,497.44 was still due, owing and unpaid.

3. *Defendant's affirmative defense of estoppel.*

Defendant Ruemar's first assignment of error is

that "[t]he court erred in failing to sustain its 'alternate plea of estoppel.'" That equitable defense alleged that plaintiff should be estopped because he represented that "the total price of renovation would not exceed $8000"; that defendant relied upon that representation in entering into a lease "predicated upon such representation" and in reliance "changed its position to its detriment."

■ We find that this equitable defense was not proved by defendant Ruemar by evidence which is convincing to us. In reaching that conclusion we may assume that defendant offered sufficient evidence to prove that it relied upon whatever representation was made by plaintiff and that, as a result, defendant Ruemar changed its position to its detriment. The difficulty with defendant's contention, however, is that it failed, in our opinion, to prove that plaintiff made a representation that "the total price of renovation would not exceed $8000." Indeed, we accept plaintiff's evidence to the contrary as the more convincing, as did the trial court, whose findings are entitled to considerable weight.[7]

The judgment of the trial court is affirmed.

---

[7] See *Cheney v. Mueller,* 259 Or 108, 119, 485 P2d 1218 (1971).