Argued and submitted December 23, 2022; affirmed on appeal, reversed and remanded on cross-appeal February 15; on appellant's petition for reconsideration filed February 28, and respondent's response filed March 8, reconsideration allowed by opinion May 3, 2023
See 325 Or App 642, 529 P3d 1024 (2023)

KIZER EXCAVATING CO.,
an Oregon corporation,
*Plaintiff-Appellant*
*Cross-Respondent,*

*v.*

STOUT BUILDING CONTRACTORS, LLC,
a Utah limited liability company,
*Defendant-Respondent*
*Cross-Appellant.*

Clackamas County Circuit Court
20CV17226; A177168

525 P3d 883

Plaintiff Kizer Excavating Co., an excavation subcontractor, brought claims for breach of a subcontract and *quantum meruit* against the general contractor, defendant Stout Building Contractors, LLC, seeking payment for excavation work for which plaintiff sought to be compensated through a change order request that defendant had rejected. Plaintiff appeals from a judgment in its favor on its *quantum meruit* claim, assigning error to the trial court's rejection of its request for attorney fees. Defendant cross-appeals, assigning error to the trial court's legal determination that plaintiff could recover on its *quantum meruit* claim in view of the existence of the express subcontract governing the parties' agreement, as well as to the court's denial of its own request for attorney fees on plaintiff's claim for breach of the subcontract, on which defendant prevailed. *Held*: The parties had an express contract that governed the work to be performed, and the trial court therefore erred in determining that plaintiff could recover on its *quantum meruit* claim. Because defendant prevailed on plaintiff's breach of contract claim as well as on the *quantum meruit* claim, defendant was the prevailing party. And because the parties had an agreement that provided for attorney fees to the prevailing party in a claim based on their subcontract, the court erred rejecting defendant's request for attorney fees.

Affirmed on appeal; reversed and remanded on cross-appeal.

Susie L. Norby, Judge.

Paul B. Barton argued the cause for appellant-cross-respondent. Also on the briefs were Alexander Graven and Olsen Barton LLC.

Holly E. Pettit argued the cause for respondent-cross-appellant. Also on the briefs were Peter J. Viteznik and Kilmer Voorhees & Laurick, P.C.

Before Egan, Presiding Judge, and Kamins, Judge, and Hadlock, Judge pro tempore.

EGAN, P. J.

Affirmed on appeal; reversed and remanded on cross-appeal.

**EGAN, P. J.**

This appeal concerns an action arising out the excavation of a commercial construction project in Dallas, Oregon. Plaintiff Kizer Excavating Co., the excavation subcontractor, appeals from a judgment in its favor on its *quantum meruit* claim, assigning error to the trial court's rejection of its request for attorney fees. Defendant Stout Building Contractors, LLC, the general contractor, cross-appeals, assigning error to the trial court's legal determination that plaintiff could recover on its *quantum meruit* claim as well as to the court's denial of its own request for attorney fees on plaintiff's claim of breach of an express subcontract, on which it prevailed. We conclude that the trial court erred in entering judgment for plaintiff on its *quantum meruit* claim, and therefore erred in determining that plaintiff was the prevailing party and in rejecting defendant's request for attorney fees on plaintiff's claim of breach of the parties' subcontract. Accordingly, we reverse and remand the judgment.

The relevant facts for purposes of the issues raised on appeal and cross-appeal are largely undisputed: The parties executed a subcontract for plaintiff to provide labor and materials for, among other services, the excavation necessary for the construction of a Jiffy Lube service station in Dallas, Oregon. The subcontract incorporated plaintiff's "Proposal and Breakdown Sheet," which estimated that plaintiff would excavate 500 cubic yards of fill from the property. The subcontract provided that plaintiff would complete the work for $139,077.

In completing the work, plaintiff excavated 3,290 cubic yards of fill, a significant increase over plaintiff's estimate. The parties agree that the discrepancy was due in part to a clerical error by plaintiff: the Proposal and Breakdown Sheet should have stated that plaintiff would excavate 1,500 cubic yards of dirt, rather than 500 cubic yards. The parties disagreed as to the cause of the remaining disparity. The trial court found that the disparity was due in part to an erroneous survey and in part to unanticipated water.

Plaintiff sought to be compensated for the additional work through an untimely change order. After defendant rejected the change order, plaintiff initiated this litigation, seeking damages for, among other claims, breach of contract and *quantum meruit*. For its breach of contract claim, plaintiff's complaint alleged that, pursuant to the parties' valid and enforceable subcontract, plaintiff performed labor for and provided materials to defendant, and that defendant breached the subcontract by failing to pay plaintiff the amount of $36,602.72 for work performed under the subcontract. For its separate *quantum meruit* claim, plaintiff alleged that it had provided the additional excavation services for defendant's benefit and at defendant's request, that it would be unjust to allow defendant to retain the benefit of those services without paying plaintiff, and that plaintiff was entitled to be compensated in the amount of $36,602.72 for labor and materials.

Defendant admitted that the parties had a valid and enforceable subcontract but denied that it owed plaintiff the additional amount either under the subcontract or on a *quantum meruit* theory. Defendant alleged as an affirmative defense that "[p]laintiff's damages, if any, are the result of Plaintiff's failure to perform in accordance with contract documents."

Plaintiff's theory at trial was that it was entitled to be compensated for the additional excavation work under the terms of the subcontract, but that, if the subcontract was deemed to be unenforceable, it was entitled to be compensated on a theory of *quantum meruit*.

The subcontract did not include an attorney fee provision. During the litigation but before trial, the parties executed an "Agreement Regarding Attorney Fees," in which they agreed to amend the subcontract "to address the sole issue of the recovery of attorney fees and costs by the prevailing party in disputes arising under the Subcontract." The parties agreed:

> "The prevailing party in any litigation, or other mutually agreed upon dispute resolution proceeding, between Contractor and Subcontractor shall be entitled to the recovery of its reasonable attorney fees and costs."

The attorney fee agreement was retroactive to the date of the execution of the subcontract.

After a lengthy trial, the trial court issued a letter opinion with detailed findings. The trial court determined that both parties had fulfilled their obligations under the terms of the subcontract, and it therefore rejected plaintiff's claim that defendant had breached the subcontract. As for plaintiff's *quantum meruit* claim, the trial court concluded that, when defendant rejected the change order relating to the additional excavation, that work became "extracontractual," outside the consensual agreement of the parties, but that plaintiff had a reasonable expectation that defendant would pay for the work. Thus, the court concluded, on a *quantum meruit* theory, plaintiff was entitled to be compensated for that work, under an "implied-in-fact" contract. The court awarded plaintiff damages of $20,211.28 on its *quantum meruit* claim, as "a reasonable value for the extracontractual work done."

In a separate letter opinion, the trial court addressed the parties' attorney fee requests under ORS 20.077.[1] The court determined that, although plaintiff had not established a breach of the subcontract by defendant, plaintiff's success on its *quantum meruit* claim, which the court

---

[1] ORS 20.077 provides, in part:

"(1) In any action or suit in which one or more claims are asserted for which an award of attorney fees is either authorized or required, the prevailing party on each claim shall be determined as provided in this section. The provisions of this section apply to all proceedings in the action or suit, including arbitration, trial and appeal.

"(2) For the purposes of making an award of attorney fees on a claim, the prevailing party is the party who receives a favorable judgment or arbitration award on the claim. If more than one claim is made in an action or suit for which an award of attorney fees is either authorized or required, the court or arbitrator shall:

"(a) Identify each party that prevails on a claim for which attorney fees could be awarded;

"(b) Decide whether to award attorney fees on claims for which the court or arbitrator is authorized to award attorney fees, and the amount of the award;

"(c) Decide the amount of the award of attorney fees on claims for which the court or arbitrator is required to award attorney fees; and

"(d) Enter a judgment that complies with the requirements of ORS 18.038 and 18.042."

regarded as an alternative breach-of-contract theory, meant that plaintiff was the overall prevailing party on the breach of contract claim. But the court declined to award plaintiff its fees. The court rejected plaintiff's contention that it was entitled to fees under the parties' "Agreement Regarding Attorney Fees." The court expressed uncertainty as to the agreement's enforceability:

> "The parties have not cited law to support the proposition that parties who are engaged in litigation on a completed contract can subsequently alter the completed contract's terms to retroactively establish a right to attorney fees under ORS 20.083. Unless that is legally possible, there is no right to attorney fees in the completed express contract that led to this lawsuit."

But the court further concluded that, even if the provision were enforceable, it was not a source for an award of fees to plaintiff on its *quantum meruit* claim:

> "Whether or not parties to a litigation can retroactively alter the substance of a completed express contract to create a statutory right to attorney fees, the express entitlement language is not transferable to the 2018 implied-in-fact contract for which [plaintiff] won its damages award."

The court concluded that plaintiff had failed to establish the existence of an implied agreement to award attorney fees on its *quantum meruit* claim, and therefore declined to award plaintiff its fees.

On appeal, plaintiff asserts that, under the terms of the "Agreement Regarding Attorney Fees," it is entitled to attorney fees for having prevailed on its *quantum meruit* claim, which, it asserts, it alleged as an alternative to the breach of contract claim. On cross-appeal, defendant contends that the trial court erred in entering judgment for plaintiff on plaintiff's *quantum meruit* claim and also erred in declining to award defendant its attorney fees for having prevailed on plaintiff's breach of contract claim.

Because they are dispositive, we begin by addressing defendant's contentions on cross-appeal, considering first defendant's contention that the court erred in determining that plaintiff had established its *quantum meruit* claim.

In *In re Klemp*, 363 Or 62, 75, 418 P3d 733 (2018), the Supreme Court said that a *quantum meruit* claim "'typically seeks compensation for services rendered in the expectation of payment, but in the absence of explicit agreement as to amount.'" (Quoting *Restatement (Third) of Restitution and Unjust Enrichment* § 31 comment e (2011). Claims in *quantum meruit* can proceed on two distinct theories: a theory based on a promise to pay for services "implied in fact," which "retains a contractual character," *Klemp*, 363 Or at 75; or a theory based on an obligation "implied in law," "as necessary to avoid unjust enrichment." *Id.*; *see Jones v. Four Corners Rod and Gun Club*, 366 Or 100, 118-19, 456 P3d 616 (2020) (same) (citing *Klemp*). A person who requests services from another may be liable on an "implied-in-fact" *quantum meruit* basis for the reasonable value of those services, based on an implied promise to pay for them. *Id.*; *see Bastian v. Henderson*, 277 Or 539, 545, 561 P2d 595 (1977) ("[O]ne who requests another to provide beneficial work, labor and materials impliedly promises to pay the reasonable value of such work, labor and materials."); *Cronn v. Fisher*, 245 Or 407, 416, 422 P2d 276 (1966) (where one person requests that another person perform beneficial services for him, the law, in the absence of any express contract, will "imply a promise *** to pay for [those services] what they were reasonably worth"). An implied-in-fact contract is inferred, in whole or in part, from the parties' conduct rather than from an express agreement; but in other respects, an implied-in-fact contract is no different in legal effect than an express contract. *Mindful Insights, LLC v. VerifyValid, LLC*, 301 Or App 256, 454 P3d 787 (2019), *adh'd to on recons*, 302 Or App 528, 461 P3d 1034 (2020); *Staley v. Taylor*, 165 Or App 256, 262, 994 P2d 1220 (2000) (citing *Restatement (Second) of Contracts* § 4 comment a (1979))

Under the *quantum meruit* theory of an obligation implied in law, in the absence of an express contract governing the subject matter, an obligation to pay is implied to prevent unjust enrichment by one party. *Jones*, 366 Or at 118-19 (quoting *Klemp*, 363 Or at 75 (citing and quoting *Restatement (Third) of Restitution and Unjust Enrichment* § 31 comment e (2011)); *Mindful Insights, LLC*, 301 Or App at 267. The court noted in *Jones* that the cited *Restatement*

comment explains that a claim pleading an "implied-in-law" theory of quantum meruit states "a claim in restitution rather than contract." 366 Or at 119 (quoting *Restatement* § 31 comment e).

The implied-in-law theory is described as "quasi-contractual" and arises when there is no express or implied-in-fact contract that governs the parties' obligations. *Klemp*, 363 Or at 75 (describing *Restatement* explanation of *quantum meruit* claim based on an implied-in-law quasi-contract as one in which the court may be unable to find an implied promise to pay but will impose an obligation to pay a reasonable price on a party who has requested and received the services of another, "as necessary to prevent unjust enrichment").

If a dispute is governed by an express contract, no contract will be implied either in fact or in law, and the terms of the express contract control. *Porter Const. Co. v. Berry et al.*, 136 Or 80, 84-85, 298 P 179 (1931) (noting "that there can be no implied contract where there is an express contract between the parties in reference to the subject-matter"); *Mount Hood Community College v. Federal Ins. Co.*, 199 Or App 146, 158, 111 P3d 752 (2005) ("It is well established that there cannot be a valid, legally enforceable contract and an implied contract covering the same conduct." (Citing *Prestige Homes Real Estate Co. v. Hanson*, 151 Or App 756, 762, 951 P2d 193 (1997))); *see also Gillett v. Tucker*, 317 Or App 570, 582, 507 P3d 323 (2022) ("The trial court erred when it determined that plaintiffs could prevail on their claim for unjust enrichment notwithstanding the valid, enforceable contract between plaintiffs and defendants regarding their obligations to each other[.]")

The parties agree that, despite the trial court's characterization of plaintiff's *quantum meruit* claim as one for a contract implied-in-fact, plaintiff's *quantum meruit* claim is properly characterized as one of quasi-contract implied in law. For its *quantum meruit* claim, plaintiff alleged that it had provided excavation services for defendant's benefit and at its request and that it would be unjust to allow defendant to retain the benefit of those services without paying plaintiff for the work. The parties agreed at trial that plaintiff's

*quantum meruit* claim arose only if there was no valid contract. Plaintiff argued to the court that its "quantum meruit claim is premised upon the unenforceability of the Subcontract." But, as noted, plaintiff also argued that the parties had a valid and enforceable express contract that covered the excavation work for which it sought additional compensation.

Defendant argues in its first assignment of error on cross-appeal that, because the parties agreed and the trial court determined that the parties had a valid and enforceable express contract that governed their performance, plaintiff's implied-in-law quasi-contractual *quantum meruit* claim has become "moot." Defendant argues, in essence, that the trial court erred in determining that, because defendant disallowed the change order, the work for which compensation was sought was "extracontractual."[2] Plaintiff responds that, although—as it argued below—the additional work was within the scope of the contract, the court correctly decided that defendant's rejection of the change order made the additional work "extracontractual."

As explained above, the parties agreed at trial, and during argument to the trial court, that the excavation work for which plaintiff sought compensation in its *quantum meruit* claim was within the scope of the parties' subcontract.[3] Given that, that work was subject to the terms of the subcontract, including its provisions relating to change orders. We do not perceive, nor has plaintiff identified, any factual or legal ground on which to conclude that the fact that defendant rejected the change order relating to additional excavation brought the work itself outside the scope of the subcontract. For that reason, we conclude that that

---

[2] We view defendant's argument as the equivalent of a contention that the court misinstructed itself on the law in concluding that the denial of the change order rendered the additional excavation extracontractual. The parties do not dispute that defendant's challenge is preserved and, given the manner in which the case was litigated, we agree.

[3] Below, in the opening statement to the trial court, plaintiff argued:

"[Defendant] has, in fact, admitted that the contract is valid and enforceable, so it would seem that those [*quantum meruit*] claims do not apply. But we think that there may still be—that those claims still may be live and important if the Court finds that the contract, itself, is unenforceable because there was no meeting of the minds."

work could not provide a basis for relief in *quantum meruit* under an implied-in-law quasi-contractual theory. The trial court therefore erred in determining that defendant's rejection of the change order made the additional excavation work "extracontractual," and that plaintiff was entitled to judgment on its *quantum meruit* claim.[4]

In light of our conclusion that plaintiff was not entitled to judgment on its *quantum meruit* claim, we agree with defendant's contention in its third assignment of error on cross-appeal that it is the prevailing party on plaintiff's breach of contract claim.

Defendant also contends in its third assignment of error on cross-appeal, that, as the prevailing party, it was entitled to attorney fees under the provisions of the subcontract, as amended by the parties' "Agreement Regarding Attorney Fees." We agree with defendant that the parties' subcontract, as amended by the "Agreement Regarding Attorney Fees," would provide for attorney fees to the party who prevailed in the litigation, and that defendant is the prevailing party.[5] We therefore remand for entry of judgment for defendant and for an award of reasonable attorney fees to defendant.

Affirmed on appeal; reversed and remanded on cross-appeal.

---

[4] Our conclusion also disposes of defendant's second assignment of error on cross-appeal, in which defendant contends that the evidence does not support the trial court's ruling on plaintiff's *quantum meruit* claim.

[5] We acknowledge the concern expressed by the trial court but are not familiar with any caselaw that would prevent the parties, on this record, from executing an agreement relating to the award of attorney fees while litigation is pending.