No. 759　　　　　August 27, 2025　　　　　53

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

McALLISTER CONSTRUCTION COMPANY,
an Oregon corporation,
*Plaintiff-Respondent,*

*v.*

Andy LIU,
*Defendant-Appellant.*

Washington County Circuit Court
20CV04702; A178831

Theodore E. Sims, Judge.

Argued and submitted July 12, 2023.

David R. Nepom argued the cause and filed the brief for appellant.

Bradley T. Crittenden argued the cause for respondent. Also on the brief was Brian D. Chenoweth, Bradley T. Crittenden and Chenoweth Law Group, PC.

Before Ortega, Presiding Judge, and Powers, Judge, and Hellman, Judge.

POWERS, J.

Reversed and remanded.

**POWERS, J.**

This appeal concerns an action arising out of the development of two residential lots in Beaverton into a 16-lot subdivision. Defendant Andy Liu appeals from a judgment in favor of plaintiff McAllister Construction Company. The judgment awards plaintiff $59,840 against defendant on plaintiff's claim to recover in *quantum meruit*. A *quantum meruit* claim "typically seeks compensation for services rendered in the expectation of payment, but in the absence of explicit agreement as to amount." *In re Klemp*, 363 Or 62, 74-75, 418 P3d 733 (2018) (internal quotation marks omitted). Here, plaintiff provided development services in the expectation of payment, but there is no evidence that plaintiff expected payment by defendant. Instead, plaintiff expected to pay defendant. Plaintiff expected to profit by purchasing the developed subdivision from defendant and building homes on it. However, plaintiff was unable to timely pay the contract price for six of the lots, the contracts to sell those lots to plaintiff were cancelled, and defendant sold the entire subdivision to a third party.

As explained below, we conclude that the trial court erred in determining that defendant was unjustly enriched by that series of events. Although defendant benefited from plaintiff's development work, the requirements for establishing a legal obligation to compensate plaintiff for unjust enrichment were not met. The trial court's apparent focus on "unjust" in a moral sense, not in a legal one, does not explain how the parties' conduct gave rise to a legal liability to compensate plaintiff. Defendant always intended to sell the developed subdivision for a profit, and there is no evidence that plaintiff expected compensation for its development work from defendant. Accordingly, we reverse the trial court's judgment and remand for entry of an amended judgment denying plaintiff's claim to recover in *quantum meruit*.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts are mostly undisputed. Defendant owned a residential lot in Beaverton and, in late 2015, he and his wife purchased an adjoining lot. In March 2015, plaintiff and defendant agreed to work together to develop

the two lots into a 16-unit subdivision. In April 2016, defendant formed Happy Ha, LLC. In March 2018, defendant and his wife transferred ownership of the two lots to the LLC. In late 2018 and early 2019, the LLC entered into contracts to sell six of the subdivided lots to plaintiff; however, plaintiff was unable to timely close on the purchase of the lots. In March 2019, plaintiff and the LLC agreed to cancel escrow, and plaintiff's earnest money payment of $15,000 was disbursed to the LLC. In April 2019, the LLC sold the entire subdivision to a third party, and about two months later the LLC was dissolved.

Based on development work that plaintiff performed for the project since around 2015, plaintiff sued defendant for breach of implied contract and also included a claim to recover in *quantum meruit*. The parties engaged in pretrial motion practice, the trial court denied defendant's motion for summary judgment, and then the parties tried the case to the court without a jury.

When plaintiff rested, defendant moved to dismiss plaintiff's two claims on a number of grounds. With respect to the first claim for breach of an implied contract, the trial court granted defendant's motion to dismiss, reasoning that the March 2015 agreement between plaintiff and defendant was replaced with a series of purchase and sale agreements (PSAs) for the six lots. However, the court denied defendant's motion to dismiss plaintiff's claim to recover in *quantum meruit*, which the court viewed as a claim for unjust enrichment. The court explained that there was "a lot of testimony about how much effort went into this project and it's abundantly clear that this subdivision could not have been successfully sold without all that work having gone into the project."

In addition, the trial court denied defendant's motion to dismiss the claims on the ground that defendant was not a proper party to the litigation. As noted above, it was the LLC that owned and sold the subdivision. In denying the motion, the court appears to have relied on the fact that plaintiff began performing development work for defendant around March 2015, but the LLC was not formed until over a year later.

After post-trial briefing, the trial court issued a letter opinion awarding plaintiff $59,840 on its claim for unjust enrichment. The court explained that "plaintiff expended hundreds of hours of [its] time working on the creation of a subdivision, which defendant sold for a taxable profit of $179,520."[1] That is, in making its ruling, the court relied on evidence that the subdivision was sold for a taxable profit of $179,520, and it awarded one third of that amount to plaintiff as an equitable division. The court explained:

> "Reduced to its essence, the overall agreement between plaintiff and defendant was a joint venture to create a subdivision, with defendant supplying the land and the needed cash, and plaintiff supplying the expertise and the oversight. The original expectation that plaintiff would profit by purchasing and building on the lots once developed did not come to fruition for various reasons, including defendant's refusal to extend an additional $5,000 credit per lot to accommodate plaintiff's lender *** and, of course, defendant's unilateral decision to sell the entire development to a third party after plaintiff's delay in closing on the first six lots without notice to plaintiff, who continued to finalize the details on readying the product for sale."

According to the court, the doctrine of unjust enrichment is an equitable theory that has three elements: "a benefit conferred, awareness by the [recipient] that a benefit has been received, and that under the circumstances it would be unjust to allow retention of the benefit without paying for it." Here, the court concluded that the facts support each of those elements:

> "Defendant's property value was increased by the work done and overseen by plaintiff, defendant was aware of, indeed, acknowledged, that such benefit had been received. The circumstances, taken as a whole, where plaintiff expended hundreds of hours of his time working on the creation of a subdivision, which defendant sold for a taxable profit of $179,520, compel the conclusion that it would be unjust to allow retention of this benefit without paying for it. The question then becomes determining what that payment

---

[1] Strictly speaking, the LLC sold the subdivision, not defendant. That difference, however, is immaterial in this case given the trial court's subsequent finding that defendant was the sole owner of the LLC and that "any increase in its value inure[d] to the benefit of defendant individually."

should be, as factors other than plaintiff's services were involved in creating that profit. The normal division of profit in a joint venture, which is essentially what this was, would be a 50/50 split. However, since defendant provided two of the three essential elements, land and cash, and plaintiff only one, expertise and oversight, an equitable division here is two thirds to defendant, and one third to plaintiff."

Ultimately, the court awarded $59,840 to plaintiff, which was one third of the profit from selling the developed subdivision. Among its supplemental findings of fact, the court found that defendant was the sole owner of the LLC, "so any increase in its value inure[d] to the benefit of defendant individually." This timely appeal follows.

## II. ANALYSIS

On appeal, defendant raises four assignments of error. We focus on the third assignment in which defendant argues that there is insufficient evidence to support the monetary award. Our resolution of that assignment obviates the need to address defendant's other assignments of error. Before turning to the specifics of defendant's argument, however, we begin by providing an overview of the legal framework for evaluating defendant's contentions on appeal.

A. *The legal framework for a claim to recover in* quantum meruit.

A *quantum meruit* claim "'typically seeks compensation for services rendered in the expectation of payment, but in the absence of explicit agreement as to amount.'" *In re Klemp*, 363 Or at 74-75 (quoting *Restatement (Third) of Restitution and Unjust Enrichment* § 31 comment e (2011)). Claims in *quantum meruit* can proceed on two distinct theories. In some cases, "a court may find that the person receiving the services impliedly promised to compensate the person providing the services at the customary or 'going rate' for such services. In those cases, in which the promise to pay is 'implied in fact,' the action retains a contractual character." *Id.* at 75.

In other cases, "the court may be unable to find an implied promise to pay but will impose an obligation to

pay a reasonable price on a party who has requested and received the services of another, 'as necessary to prevent unjust enrichment.'" *Id.* (quoting *Restatement* § 31 comment e). Those cases are described in terms of a contract or obligation "implied in law." *Id.* (internal quotation marks omitted). Although it is "quasi-contractual," an obligation implied in law is grounded on a right to restitution to prevent unjust enrichment. *Id.* at 75-76; *see also Jones v. Four Corners Rod and Gun Club*, 366 Or 100, 119, 456 P3d 616 (2020) (explaining that the latter theory of *quantum meruit* "states a claim in restitution rather than contract and usually asserts that the defendant is obligated to pay a reasonable price for specified services rendered" (internal quotation marks omitted)).

"If a dispute is governed by an express contract, no contract will be implied either in fact or in law, and the terms of the express contract control." *Kizer Excavating v. Stout Building Contractors*, 324 Or App 211, 218, 525 P3d 883, *adh'd to as modified on recons*, 325 Or App 642, 529 P3d 1024 (2023); *see also Mount Hood Community College v. Federal Ins. Co.*, 199 Or App 146, 158, 111 P3d 752 (2005) ("It is well established that there cannot be a valid, legally enforceable contract and an implied contract covering the same conduct.").

When a dispute is not covered by an express contract addressing the subject matter, then the claimant may assert a claim to recover in *quantum meruit* or as necessary to prevent unjust enrichment. In the past, claims for unjust enrichment were evaluated by requiring a showing of three elements: "'a benefit conferred, awareness by the recipient that a benefit has been received and, under the circumstances, it would be unjust to allow retention of the benefit without requiring the recipient to pay for it.'" *Larisa's Home Care, LLC v. Nichols-Shields*, 362 Or 115, 129, 404 P3d 912 (2017) (rejecting the three-element approach articulated in *Jaqua v. Nike, Inc.*, 125 Or App 294, 298, 865 P2d 442 (1993), that derived from the 1992 supplement to 3 *Corbin on Contracts* § 561 (1963)). However, the Supreme Court criticized that three-element approach as too "formulaic," and as both underinclusive and overbroad, depending on the circumstances. *Id.* at 129-32. Instead, the court

explained that courts must utilize a case-by-case approach because this area of the law remains "a work in progress." *Id*. at 125. That case-by-case approach requires courts to "examine the established legal categories of unjust enrichment as reflected in Oregon case law and other authorities to determine whether any particular enrichment is unjust." *Id*. at 132. Notably, the court held that the question of unjust enrichment is a legal one, and courts should not base a decision on an "abstract sense of moral judgment." *Id*. at 126.

Applying that framework here, we focus on whether plaintiff had a legally protected interest to be paid by defendant for plaintiff's development work, and whether defendant acquired the benefit of plaintiff's development work in a manner that the law regards as unjustified.

B.   *Whether the record supports the trial court's award to prevent unjust enrichment.*

On appeal, defendant argues that there was insufficient evidence to support the trial court's award of $59,840 to plaintiff. Defendant contends that there was no evidence of a joint venture, no evidence of a reasonable developer's fee or the reasonable value of the services plaintiff performed, and no evidence of a reasonable hourly rate. Plaintiff remonstrates that the argument was not preserved, and, in any event, the trial court had "wide latitude" to determine the amount of money to award plaintiff to avoid defendant's unjust enrichment.

As an initial matter, we reject plaintiff's contention that defendant failed to preserve the argument for appeal. In his motion to dismiss made after plaintiff rested, defendant argued that there was "no proof of damages or an amount of damages that the Court is capable of awarding without speculation." Defendant also asserted that the profit that he or the LLC made from selling the subdivision was attributable to a range of factors, and that plaintiff's development work was only one of them. Those arguments were sufficient to preserve the issue raised on appeal.

Turning to the merits, we conclude that there was insufficient evidence that defendant was unjustly enriched in the amount of $59,840. The record indicates that plaintiff

expected to be compensated for its services by purchasing the developed lots, building homes on them, and selling them for a profit. In other words, plaintiff expected to be compensated for its development services by the purchasers of the built homes, not by defendant. The parties' original agreement changed over time and was replaced by the six PSAs, but having reviewed their terms, they do not give rise to a reasonable expectation that defendant would compensate plaintiff for its development services. Instead, the PSAs simply provide that, if the purchaser of the lots (plaintiff) failed to perform, then the earnest money would be paid to the seller (defendant's LLC) and the contracts would be "of no further binding effect." That is what occurred when plaintiff was unable to purchase the lots.

In determining that defendant was unjustly enriched, the trial court made three errors. First, based on its finding that defendant profited from the development services plaintiff provided, the court concluded that defendant "should reasonably have expected to compensate" plaintiff. We are not persuaded that there was evidence of that reasonable expectation.

For example, in *Kolve v. Maid Rite Shops, Inc.*, 282 Or 89, 92, 577 P2d 502 (1978), the plaintiffs were unable to prove that they had an enforceable contract with the defendants regarding rent for the plaintiffs' restaurant premises, but the trial court granted relief in *quantum meruit* for the reasonable rental value. In affirming that award, the Supreme Court emphasized that the defendants admittedly occupied the premises and that "[i]t could hardly come as any surprise to defendants, if they were successful in sustaining their denial of a specific agreement as to the amount of the rental, that the court might make an award based upon the reasonable value of their use of the premises." *Id.* at 92. Here, by contrast, there is no evidence that the parties expected that defendant would compensate plaintiff for its development work. Instead, the expectation was that defendant would profit by selling the developed subdivision to plaintiff, and that plaintiff would profit by building on it and selling the homes to third parties. In the absence of a reasonable expectation that the LLC would have to share

its profits with plaintiff, we conclude that there was no evidence to support the trial court's unjust enrichment award.

Second, the trial court found that the overall agreement was "a joint venture to create a subdivision," and the "original expectation" was that plaintiff "would profit by purchasing and building on the lots once developed." However, there is no evidence of any agreement or joint venture that would entail defendant compensating plaintiff for its development work in the event that plaintiff was unable to purchase the developed lots. And there is no evidence of an agreement or a reasonable expectation that plaintiff would be entitled to one third of the LLC's profit from the sale of the subdivision. It is not enough that defendant would benefit from plaintiff's expertise and oversight. As explained in the *Restatement*, "[r]eceipt of a benefit at the expense of another is a necessary but not a sufficient condition of liability in restitution, because a person who receives a benefit is not necessarily obligated to pay for it." *Restatement* § 2 comment b. As the *Restatement* further explains:

> "It is a fact of common experience that a person may benefit from the effort and expenditure of others without incurring a legal obligation to pay. To be the subject of a claim in restitution, the benefit conferred must be something in which the claimant has a legally protected interest, and it must be acquired or retained in a manner that the law regards as unjustified."

*Id*. Here, both parties were sophisticated, and there is no suggestion that defendant took unfair advantage of plaintiff. That defendant would compensate plaintiff for development work if plaintiff was unable to purchase the lots was simply not part of any agreement.

Put another way, the evidence establishes that both parties understood that the LLC would profit by selling the developed subdivision; however, there is no evidence that plaintiff expected to share in the LLC's profits. Although the trial court sought to craft an equitable division, "the question of when enrichment is unjust does not turn on whether one has been unjustly enriched in some abstract sense of moral judgment." *Larisa's Home Care*, 362 Or at 126. Instead, the question is whether defendant was

"unjustly enriched by legal standards." *Id.* at 127 (quotation marks and emphasis omitted); *see also* Michael Traynor, *The Restatement (Third) of Restitution & Unjust Enrichment: Some Introductory Suggestions*, 68 Wash & Lee L Rev 899, 900-01 (2011) (explaining that the "enrichment must be 'unjustified' under the law, not simply 'unjust' because you as a judge, scholar, or lawyer might think so").

Third, the trial court appears to have focused on a moral evaluation of defendant's conduct, not whether defendant was legally unjustly enriched. That is, the trial court's decision relies on defendant's conduct contributing to plaintiff's inability to purchase the six lots in accordance with the terms of the PSAs. In its letter opinion, the court noted that defendant refused "to extend an additional $5,000 credit per lot to accommodate plaintiff's lender (an amount made necessary because the sale price was increased above the appraised value by that amount, which plaintiff agreed to as defendant faced increased time pressure to sell)," and the court also took note of "defendant's unilateral decision to sell the entire development to a third party after plaintiff's delay in closing on the first six lots without notice to plaintiff, who continued to finalize details on readying the project for sale."

Although defendant may have treated plaintiff poorly, there is no indication that defendant's conduct was fraudulent or otherwise illegal. *Cf. Larisa's Home Care*, 362 Or at 139 (concluding that the facts of the case supported a determination of unjust enrichment because the defendant received care at a discounted rate based on her agent's false representations). Here, plaintiff received the benefit of the bargain when defendant provided plaintiff with the opportunity to purchase the six lots. Certainly, defendant benefited from plaintiff's development work when the subdivision was sold to a third party for a profit. Focusing on that benefit, the trial court determined that "it would be unjust to allow retention of this benefit without paying for it." In so concluding, however, the court appears to have viewed the outcome as "unjust" in a moral sense, not in a legal one. The court failed to explain how the parties' conduct gave rise to a legal liability to compensate plaintiff, let alone a legal liability in the amount of one third of the LLC's profits. *See*

*id.* at 127-28 (explaining that unjust enrichment law must be "based on recognized grounds for imposing liability"); *see also Restatement* § 2 comment b ("To be the subject of a claim in restitution, the benefit conferred must be something in which the claimant has a legally protected interest, and it must be acquired or retained in a manner that the law regards as unjustified.").[2] The evidence does not support the trial court's conclusion that defendant was legally obligated to compensate plaintiff for its development work to prevent unjust enrichment.

In arguing that we should affirm the trial court's award, plaintiff relies on the *Restatement* section 31 comment e, which discusses a claim for recovery in *quantum meruit*. In particular, comment e explains how, in some cases,

> "the measure of compensation depends on the results obtained. In the rare case where there is no evidence of market, custom, or usage to settle the question, the reasonable value of the plaintiff's services—in a case within § 31, the amount 'necessary to prevent unjust enrichment'—is a question for the finder of fact, based on all the circumstances of the case."

That comment, however, does not aid plaintiff's argument, nor does it provide a justification for the court's determination that $59,840 was the amount necessary to prevent unjust enrichment. Indeed, section 31(1) provides that "[t]here is no unjust enrichment if the claimant receives the counterperformance specified by the parties' unenforceable agreement." *Restatement* § 31(1). Here, although the PSAs were not unenforceable, the LLC provided plaintiff the opportunity to purchase the six lots.

Plaintiff also points to the *Restatement* section 49 comment d, which explains that, "[i]n particular circumstances, a recipient's subsequent disposition of property may

---

[2] The types of circumstances in which there may be a legal liability in restitution include when "benefits [are] conferred by mistake," in "cases involving defective consent or authority on the part of the transferor," or when "benefits [are] acquired by tort or other breach of duty." *Larisa's Home Care*, 362 Or at 128. Although that list does not purport to be exclusive, there is no evidence of those circumstances here. If there is an argument to be made in support of the trial court's unjust enrichment award based on a section of the *Restatement*, plaintiff has not made it.

yield a natural valuation of nonmoney benefits whose value to the recipient would otherwise be difficult to measure." That comment, however, presupposes that the claimant has established an entitlement to restitution. Here, the record is devoid of any evidence giving rise to a reasonable inference that plaintiff had a "legally protected interest" such that defendant was required to compensate plaintiff for its development work. In short, we conclude that the trial court erred in awarding $59,840 to plaintiff. We remand for the trial court to enter an amended judgment denying plaintiff's claim to recover in *quantum meruit*.

Reversed and remanded.